## L. & N. Railroad Co. v. Goodwin.

(Decided November 30, 1910.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Third Division).

1. Master and Servant—Safe Appliances.—When a servant claims that he has been injured by the failure of the master to furnish him reasonably safe appliances, and sues to recover damages, he must show that his injuries were the proximate cause of the failure of the master to furnish him reasonably safe appliances.

2. Application of Principle.—Appellee, who was working at a machine, was injured by the breaking of a chain. He claimed that the breaking of the chain was due to the improper adjustment of another chain that he used. He failed to show that if the chain had been properly adjusted he would not have sustained the injuries, and therefore failed to make out a case.

HELM & HELM, BENJAMIN D. WARFIELD and CHARLES H. MOORMAN for appellant.

A. T. BURGEVIN for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

The appellee in this action to recover damages for personal injuries sustained by him while in the employ of the appellant company, recovered $1,500.00.

At the time of his injury, he was employed in operating a machine used in smoothing uneven or flat places on railroad car wheels. In a general way, the labor at which appellee was employed may be described as follows:   Two car wheels, with the axle attached, would be rolled on a track to a point under an air hoist. This hoist consisted in part of a cylinder about four feet long and eight inches in diameter. The top end of the cylinder was closed by an air-tight cap, and was suspended by a bolt from a single overhead track some two feet above the cylinder, on which track it could be moved backward and forward. Attached to the bottom cap of the cylinder was an air pipe, through which air was admitted into the cylinder for the purpose of forcing the piston rod up.   There was also an escape valve to let the air out and thereby lower the piston rod.   The piston rod projected out of the lower end of the cylinder some two feet, and on the lower end of this piston rod was a hook. On this hook a chain some eight feet long was fastened in the center, and each end of it hooked around the axle, so that when the piston rod was raised the axle as well as the wheels would be lifted from the track.   When so raised the cylinder, with the axle and wheels, would be rolled by means of the wheels on the overhead track to the machine in which the wheels were to be placed to be smoothed.     When   they were placed in this machine, which weighed about thirteen tons, the ends of the axle that projected outside the wheels would be fastened by a clutch, which while holding the wheels and axle firm and steady, permitted them to turn, and in this position a lathe that was a part of the machine, would be applied to the wheel and the operation of smoothing executed.

At a point in this air hose, about two inches below the bottom cap of the cylinder, there was a valve operated by a cross-piece six inches in length, to each end of which a small chain was attached.   By pulling one of these small chains, the valve on the air pipe would open and the air pressure escape into the cylinder, raising the piston rod.   By pulling the other chain, the air in the cylinder was allowed to escape, thereby lowering the piston rod.

On January 3rd, appellee discovered that air leaked through the bottom cap of the cylinder on account of insufficient packing, and so he requested that it be repaired, and the repairs were made on that day.   On the morning of January 4th, when appellee commenced to work, he discovered that the bottom cap of the cylinder

had not been screwed on properly, the effect of which was that the cross-piece, from each end of which was suspended the small chains that were used in moving it to let air in and out of the cylinder, was placed on the opposite side of the cylinder cap from the place where he stood in working these chains. In other words, the cap should have been screwed on so that the cross-piece would be on the side of the cylinder cap nearest to where the operator stood, in place of being on the side of the cap farthest from him. As a result of this improper adjustment of the cap, the chains that he used in opening and closing the air valve were about eight inches farther from where he stood in operating the cylinder than they would have been had the cap been properly screwed on. When appellee made this discovery, he at once called Hutchins, the mechanic who had repaired the cylinder in his absence, telling him that he had put the valve chains on the wrong side of the cylinder cap, and this made the work dangerous, as it was necessary for him to stand closer to the axle and wheels in operating the valve chains, and that the chains that lifted the wheels might burst or the hoist fall, and he would get hurt. Hutchins said to him that it was too much trouble to readjust the cylinder cap then, and that he would do it the next time it had to be taken down for repairs. Appellee, not satisfied with this, and yet insisting that it was dangerous to operate the hoist in the condition it was, went to see Kavanaugh, the foreman of the shop, and showed him how Hutchins had left the cylinder cap, and also told him that it was dangerous to leave it that way, giving the same reason that he did to Hutchins. Kavanaugh, in reply to this, said: "We are too far behind the work now; go ahead and work it for awhile," or "Do the best you can and wait awhile." The matter for the time rested with this, and appellee went about his usual work of operating the machine, and so continued until January 14th, when one of the large chains attached to the end of the piston rod and axle broke, striking him in the face.

There is no suggestion in the record that the chain that broke was defective or unsuitable for the work being done; nor is there any claim that there was any defect in any other part of the machinery except in the location of the cross-piece before mentioned. What caused the chain to break is involved in doubt, and in view of the fact that there will probably be a new trial,

we do not think it proper to discuss the cause of the breaking of this chain.

The trial court submitted the case to the jury upon the single question of the defect in the position of the lower cap of the cylinder which placed the cross-beam farther away from the operator than it should be.

The promise to repair, and the failure to do so, although made a ground of negligence, was ignored in the instructions, and we think properly so, as the evidence did not sufficiently show that any promise to repair was made or that appellee in continuing to work relied on any promise to repair. (American Tobacco Co. v. Adams, 137 Ky., 414.)

But, the case must be reversed, because it does not appear from the evidence that the location of the valve chains on the cylinder cap was the proximate cause of the injury to appellee. It was necessary to a recovery that appellee should not only show that he was injured, but that his injuries were due to the improper location of the valve chain, as that is the ground of negligence relied on. The appellee proved the injury, and that it was caused by the breaking of one of the chains, but he did not connect the injury with the condition or location of the valve chains on the cylinder cap. There is no evidence that the location of the valve chains had anything to do with or contributed anything towards causing the chain to break, and although it was not necessary to a recovery to show that the location of the valve chains had anything to do with the breaking of the chain, yet it was essential that he should show that if the valve chains had been in their proper position he would probably not have been struck by the chain when it broke. In other words, there should have been some evidence conducing to show that the position appellee was compelled to occupy in operating the machine on account of the location of the valve chains placed him in such a position that the chain, if it broke, would strike him. Or, to put it in another way, if the valve chains had been properly adjusted, and appellee would have been hit as he was by the chain, it is manifest that the location of the valve chains would not be responsible for his injuries. Bearing in mind that the only fault about the machinery was the location of the valve chains, it cannot be said that appellee's injuries resulted from the location of these chains in the absence of some evidence that he would have escaped injury had they been properly located. If he would have been hurt in the same way

had the valve chains been properly adjusted, then the improper adjustment had nothing to do with his injury, or at least was not the proximate cause of it. It is true that the appellee testified he said to Hutchins, as well as Kavanaugh, that the location of the valve chains made the work dangerous, and that if the chain should burst the hoist would fall down; but this was not sufficient to make out his case. As appellee put his case upon the ground that the improper location of the valve chains placed him in a position of danger and caused his injury, it was necessary that he should show by some evidence that if the valve chains had been properly adjusted the chain when it broke would not have struck him. On another trial, if the evidence on this point is the same as on the last trial, the court should direct a verdict for the defendant; but if there is evidence conducing to show that appellee would not have been struck by the chain if the valve chains had been properly adjusted, then the court should let the case go to the jury under the instructions given on the last trial.

Wherefore, the judgment is reversed, with directions for a new trial in conformity with this opinion.