### Nelson v. Black Diamond Mining Company, et al.

(Decided January 12, 1916.)

### Appeal from Muhlenberg Circuit Court.

1. Negligence—When Specific Acts May Be Proven—Pleading.—In an action to recover damages for personal injuries, which result from negligence, if the negligence complained of is stated in general terms, any specific acts of negligence may be proven and relied upon, but if the specific acts constituting the negligence complained of are alleged, acts not alleged in the pleadings can not be proven nor relied upon.

2. Trial—Peremptory Instruction.—A peremptory instruction is not authorized unless, after admitting the testimony offered by a plaintiff, and every reasonable inference to be deducted from the facts proven, to be true, his cause of action is yet unsupported in any degree.

3. Trial—Peremptory Instruction.—Where a motion is made at the conclusion of all of the testimony for a peremptory instruction, the plaintiff is entitled to have considered the facts appearing from his evidence, and also, all the facts developed by the evi-

dence of the defendant, which goes to support plaintiff's cause of action.

4. Trial—Peremptory Instruction.—Wherever it is the province of the jury to determine the weight of the evidence offered in support of a cause of action, a peremptory instruction should be denied.

5. Trial—Submission to Jury.—If the facts in proof are undisputed, yet, if reasonable men may arrive at different conclusions from them, the question should be submitted to the jury.

6. Damages—Mortuary Tables—Evidence.—Where one claims damages for a personal injury, which impairs his power to earn money, Dr. Wigglesworth's table of mortality is competent evidence in proof of the number of years which the claimant may be reasonably expected to live.

D. M. ROLL and B. F. PROCTOR for appellant.

TAYLOR, EAVES & SPARKS and MASTIN & SHERLOCK for appellees.

OPINION OF THE COURT BY JUDGE HURT—Affirming in part and reversing in part.

The appellant, O. P. Nelson, is a young man of twenty-three years of age, and on the 25th day of June, 1914, was engaged in the service of the appellee, Black Diamond Mining Company, which was engaged in operating a coal mine near Drakesboro, in Muhlenberg county. The appellee, W. B. Franklin, was a superior servant of the appellant, and was engaged in the service of his co-appellee as the day foreman of the mines. The service which appellant was engaged in performing was that of a motor rider, or helper in the operation of the motor, which was used in the mines for the purpose of moving the cars loaded with coal out of the mines and returning the empty cars to be reloaded. The motor was propelled by electricity, and was operated by one Jernigan, who had a seat upon the rear end of the motor, and who controlled its operation. The appellant, in the performance of his duties as motor rider, had a seat upon the front end of the motor, and it was his duty to use the sand upon the rails upon steep grades to lessen the momentum of the motors and attached cars, in descending grades, and to assist the motor in ascending grades. It was also his duty to observe the track in front of the motor for any obstructions that might be upon it and to signal the motor driver. The motor was about twelve to fifteen feet in length, and was supplied with a head light of several hundred candle power. At a cer-

tain point in the mines an entry diverged from the main entry, along which the car tracks were laid, and at this point there was a switch, and another track proceeded along this diverging entry into another part of the mine. At this switch a boy, Clyde Hinds, eighteen years of age, was stationed, whose duties were to turn the switch to enable a train of cars to pass from the main track into the diverging entry, and to replace the track to enable trains to pass over the track in the main entry, and to signal a train going out of the mine over the main entry to proceed past the switch and on its way, if the track was clear. On the occasion in question, Jernigan, with a train of fourteen loaded cars, and with the appellant as his motor rider or assistant, was returning from the interior of the mines along the track upon the main entry, and when he had arrived within one hundred to one hundred and fifty feet of the switch, he stopped to receive information from the switchman whether or not to proceed on past the switch and to the entrance of the mine with his train of fourteen cars. Four or five minutes before the arrival of Jernigan's train, another train composed of empty cars moved by a motor had arrived at the switch going into the interior of the mine, when the switchman placed the switch and this train of cars proceeded along the diverging entry into the mines in that direction. Just before arriving at the switch, the rear empty car became detached in some way from the train and was left standing upon the track in a depression at the foot of a considerable grade, which extended up from it and past the switch to Jernigan's train. The empty car stood upon the track about forty feet below the switch. When the train of empty cars had passed over the switch into the diverging entry, the switchman, without observing, as he stated, that the empty car was left upon the main track below the switch, in the depression, replaced the track and signalled Jernigan to proceed. Jernigan immediately did so, and when the appellant observed the empty car upon the track and that a collision was unavoidable with it, undertook to save himself by jumping from the motor to the ground beside the track, and the motorman, also leaped from the motor, and the appellant fell or his foot slipped back in such a way that the wheels of the motor passed over his foot, crushing it to a pulp, which required its immediate amputation. The collision of the motor with the empty

car resulted in throwing the motor and two of the cars following it from the track.

Appellant brought this suit against the appellees, Black Diamond Mining Company and its foreman, W. B. Franklin, in which he sought to recover from them damages for the injuries he had sustained. He alleged that the appellee, Franklin, as mine foreman, had control over the men employed in the mine, and with full power to hire and discharge, direct and control the employes of the appellee company, and had control over the operation and construction of the mine; that he was forced to jump from the motor upon which he was riding to avoid great and impending danger from a collision with the empty car, which had been left upon the track by the negligence of the appellees without his knowledge, and that at the place where he was compelled to jump from the motor the appellees had constructed its road way with the track too near to the wall, negligently rendering the track defective and dangerous to him and the other employes in the discharge of their duties, and had, with gross negligence, permitted the track to be obstructed with coal and slack in such a way as to render the track defective and dangerous; that this defective and dangerous condition of the track was known to the appellees or could have been known by the exercise of ordinary care, but that he did not know it and could not have known it by the exercise of ordinary care; that appellees had employed and permitted to remain in their employment Jernigan, who was reckless and incompetent as a motor driver, and Hinds, the switchman, who was without experience and unfit to act as such, and that the switchman negligently gave appellant a signal to proceed, and that the track was safe, when it was, in fact, obstructed by the car and otherwise, as charged; and that the motor driver operated it at a reckless and dangerous rate of speed, and that all of the acts of negligence charged by him, as above stated, were gross, and that he was injured by the concurring gross negligence of appellees and the other servants of appellee company; that he did not know of the incompetency of either Jernigan or Hinds until after his injury, but that appellees did know of their incompetency or could have known by the exercise of ordinary care, but with knowledge and means of knowledge of such incom-

petency and unfitness on the part of Jernigan and Hinds, kept them in its service.

The appellees each filed a separate answer, in which they each traversed the various allegations of the petition, and in addition thereto plead that the injuries incurred by appellant were caused and arose from his contributory negligence. The plea of contributory negligence was, by agreement, controverted upon the record.

Upon the trial, after all of the evidence had been heard, both for the appellant and the appellees, the court, over the objection of the appellant, instructed the jury peremptorily to find for the appellees, which the jury accordingly did, and a judgment was rendered dismissing the petition, to all of which the appellant excepted. The appellant filed grounds for a new trial and entered a motion to that effect, which was overruled by the court and he now appeals to this court.

The appellant complains that the court erred in requiring a direct verdict by the jury against him, and, also, erred to his prejudice in excluding from the jury competent evidence offered by him upon the trial.

For the purpose of determining whether the court was in error in directing a verdict for the appellees, it will be necessary to consider the facts, which the evidence tended to prove. Where the evidence conduces, to any extent, to establish a right of recovery upon the part of one sueing, a motion to instruct the jury to find a verdict against him ought to be denied. Before such an instruction is authorized, it must appear, that after admitting the testimony offered by him to be true, and every reasonable inference to be deducted from it, the claim of one seeking a recovery, yet fails to be supported. Shelby v. C. N. O. & T. P. Ry. Co., 85 Ky., 224; L. & N. R. R. Co. v. Howard, 82 Ky., 212; Bedford v. L. & N. R. R. Co., 82 Ky., 286; Eskridge v. C. N. O. & T. P. Ry. Co., 89 Ky., 367; Jarman v. Howard, 3 Mar., 383; Rowland v. Hanna, 2 B. M., 129; Easley v. Easley, 18 B. M., 93; Trotter v. Sanders, 7 J. J. M., 321; Slaughter v. Morgan, 1 Met., 29; Stephens v. Brooks, 2 Bush, 138. The motion for a direct verdict, in the case at bar was made at the conclusion of the evidence in chief for appellant, and was then overruled, and after the introduction of the evidence for the appellees, the motion was renewed and sustained. In such case, the appellant was entitled also to the benefit of any facts which were de-

veloped by the appellees' evidence, which go to sustain his cause of action, as well as the facts appearing from his own evidence. Ohio Valley. Ry. Co. v. McKinley, 16 R,. 445; Ky. & Indiana Bridge Co. v. Cecil, 14 R., 477. Wherever, in support of a cause of action, evidence is offered, the weight of which it is the province of the jury to determine, a peremptory instruction to find for the defendant should not be given.

In this case the appellant set forth in his petition the specific acts of negligence, which he alleged concurred to cause his injury. It is well settled that in actions to recover damages for personal injuries resulting from negligence, if the negligence complained of is stated in general terms, any specific acts of negligence may be proven and relied upon, but if the specific acts constituting the negligence complained of are alleged, acts not alleged in the pleadings can not be proven nor relied upon. L. & N. R. R. Co. v. McGary's Admr., 104 Ky., 517; Edwards' Admr. v. C. & O. Ry. Co., 32 R., 1241; Gaines & Co. v. Johnson, 32 R., 58; Ballard & Ballard Co. v. Durr, 165 Ky., 632.

The acts of negligence relied upon in the petition are as follows:

First: The leaving of the empty car upon the track, without notice to appellant.

Second: The construction of the entry at the point where appellant was compelled to jump from the motor to avoid the danger to him of a collision of the motor with the empty car, was such that the wall was too near the track, thereby rendering the track defective and dangerous.

Third: Allowing the track to be obstructed with coal and slack in such manner as to render the track defective and dangerous.

Fourth: Having in its service the motor driver, Jernigan, who was incompetent and reckless, and who, at the time of the injury, was operating the motor at a high, reckless and dangerous rate of speed.

Fifth: The employment of Hinds as a switchman, who was young, without experience and unfit to perform the duties required of him, and who gave a signal to proceed and that the track was clear, when, in fact, it was obstructed by the empty car.

Without undertaking to state the evidence with particularity, that introduced by appellant conduced to show

that appellee, Franklin, was the mine foreman for his co-
appellee, and had been for about three years, and had
authority over the employes in the mines and that it
was his duty to look after and keep in safe condition, the
tracks; that he employed a number of the hands who
were working in the mines; that he directed the switch-
man, Hinds, to perform the duties of such at the point
where he was acting as such at the time of appellant's
injury; that Jernigan had been performing the duties
of motor driver in the mine of which Franklin was fore-
man, for two or three years; that he operated the motor
too fast for safety, in the opinion of several witnesses;
that Hinds was eighteen years of age and had been per-
forming the duties to which he was assigned, at differ-
ent times, for several months, but had been at the par-
ticular switch mentioned for only one and one-half days;
that appellant had performed the duties of motor driver
or helper at several different places, but only assisted
Jernigan for one day and a half, when he was injured;
that a motor driver with a train of fourteen empty cars
had passed over the main track and into the diverging
entry, over the switch at which Hinds was stationed; that
the rear empty car became detached and was left stand-
ing upon the track at the foot of the decline leading down
from the switch and about forty or fifty feet from the
switch, but no explanation was given as to how it hap-
pened to become detached; that there was no light closer
to this car than the one at the switch; that the empty
car could be seen from the switch; that Jernigan with
appellant as his helper, just as the other train passed
over the switch, was proceeding from the interior of
the mines, along the main track and entry, and ap-
proached within one hundred to one hundred and fifty
feet, where he stopped his train and waited to receive
the signal from Hinds to proceed; that appellant did not
and could not see the empty car upon the track from this
point; that Hinds replaced the track and gave the sig-
nal to proceed; that Jernigan proceeded at a rate of
speed from twenty to twenty-five miles an hour, down
the decline past the switch and in the direction of the
empty car; that the appellant saw the empty car upon
the track about the time the motor upon which he was
riding passed the switch; that Jernigan, in passing, was
looking toward Hinds to observe if he gave him a signal
to return and did not see the empty car until his motor

was within five feet of it; that appellant sat upon the front end of the motor, with his face turned in the direction it was proceeding and keeping a lookout for any obstacle which might be upon the track; that the motor and train could not have been stopped by the exertions of the driver, between the switch and the point of collision with the empty car, though its speed might have been reduced; that appellant, fearing for his life from the impending collision, jumped from the motor when within ten or fifteen feet; that he did not have time to signal Jernigan to stop the motor and train after seeing the car, except to give a loud whistle, which he did, and which was the customary signal given of danger, when the time was so limited, that a signal with the lamp could not be given; that the speed was so great, that when he jumped, he could not stand up, and fell, and his foot was caught under the motor and crushed, and had to be amputated; that Jernigan sprang off just as the motor collided with the car and escaped unhurt. The collision threw the motor from the track and across the track and also derailed the two cars next to the motor; that the track upon the side upon which appellant leaped off was four feet and six inches from the "ribs" or wall upon that side; that the entry was eleven or twelve feet wide, and some debris, in the way of stone or slate, had been put along the sides of the track to hold the track in place and steady; that overhead the entry had been elevated higher in the center than it was at some places next to the side walls; that at the time Hinds gave Jernigan the signal to proceed, he did not know that the empty car was upon the track; that a flag was carried upon the rear car, of a train of empty cars, so that the switchman could observe and know, when a train had passed him, whether any of them had become detached; that Hinds did not know of this regulation; and appellee, Franklin, when he set him to do the duties of switchman, at the place in question, did not inform him of the regulation, and for that reason he failed to know of the empty car being upon the track, and gave Jernigan the signal to proceed, but no reason is assigned for his failure to see the empty car. Hinds, furthermore, stated that he ceased to act as switchman because he was not competent for the duties. A diagram seems to have been used in taking the testimony below, and the witnesses made many of their statements with relation to

it, but the attorneys have not seen proper to include a copy of it with the transcript, so that this court could have the benefit of it, and for that reason many of the statements of the witnesses are unintelligible, and the facts of the case have been gathered with great difficulty, but there does not seem to be any evidence to support the allegation that the track was defective or dangerous because it was constructed too near to the wall. The allegation that appellees were negligent in permitting the track to be obstructed with coal or slack and thereby rendered it defective and dangerous, is not supported by any proof, and appellant stated that the track was in good condition. The proof in regard to debris, which was in the entry between the track and "ribs," was not competent, except in explanation of why appellant's foot slipped back under the motor, if it did so, as the existence of such debris was not relied upon in the petition as an act of negligence contributing to the injury.

There is no proof that Hinds was incompetent to perform his duties, except his own statement, and no proof that if incompetent, that Franklin or any of his superiors knew or by the exercise of ordinary care could have known of his alleged incompetency.

The evidence offered by appellant conduced to prove the other acts relied upon by appellant as negligent, and concurring to cause his injury, and as the proximate cause of it, and his cause should have been, under proper instructions, submitted to the jury for its determination as to the Black Diamond Coal Company. The acts relied upon by appellees to support their plea of contributory negligence are not supported by uncontradicted testimony, and it was the province of the jury to determine the weight to be given to the evidence in support of the plea of contributory negligence, and that given in denial of the proof of the facts upon which it was based. Even though the facts are undisputed, if reasonable men may draw different conclusions from them, the question of negligence is to be decided by the jury and not by the court. Central Coal & Iron Co. v. Owens, 142 Ky., 19.

The appellant offered in evidence Dr. Wigglesworth's table of mortality, but upon objection, it was excluded. This was error. Upon a claim of one for damages for a personal injury, which impaired his power to earn money, it is competent to use such table in proof of the

number of years which the claimant may be reasonably expected to live, although it does not prove how many years he would have been able to earn money, but it may be heard by the jury for what it is worth. I. C. R. R. Co. v. Houchins, 28 R., 501; Greer v. L. & N. R. R. Co., 94 Ky., 169; L. & N. R. R. Co. v. Gordon, 24 R., 1819.

As to the appellee, W. B. Franklin, the uncontradicted evidence shows, that he had no authority to employ servants in the mines, except by specific directions from the superintendent, and no authority to discharge an employe; that he did not employ Jernigan and had no authority over him.

The evidence to the effect that a flag or rag was carried upon the rear car of a train of empty cars to inform the switchman whether all the cars were attached or that one or more were detached and obstructing the track, and that Franklin placed Hinds at the switch to do duty as switchman, and failed to inform him of the regulation in regard to the flag or rag upon the rear car of the empty trains, was evidence conducing to prove an act of negligence upon the part of Franklin, but this evidence was not admissible, because this act of negligence was not alleged nor relied upon in the petition.

It is therefore ordered that the judgment appealed from be affirmed as to appellee, Franklin, and reversed as to the Black Diamond Mining Company, and remanded for proceedings in conformity to this opinion.