## Southeastern Telephone Company v. Payne.

(Decided March 6, 1934.)

246

H. C. CLAY for appellant.

C. R. LUKER for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

This appeal requires the review of a trial before a jury in an action for a personal injury, charged to have been sustained by Charley Payne while traveling on the edge of a public highway by being struck on his arm, side, and back by a pole extending beyond the side of a

Ford coupe which at the time was being used as an improvised truck in the transportation of the employees, tools, and implements of the Southeastern Telephone Company for the purpose of resetting poles along the side of the highway to be used by the company in its business.

Payne was traveling along a path, customarily used by footmen, on the right side of the highway, when he claims he was struck by a spike pole on the truck of the telephone company, injuring his arm, side, and back. Payne knew the truck was approaching from the rear, but did not know the spike pole extended over the side of the truck. He claims it was traveling 30 or 35 miles an hour. As to the effect it had upon him, he claims it "made him pretty sick"; hit him across the arm and back all at the same time; raked him on the side, threw him in a twist toward his wife who was accompanying him, almost tripping him up. At that time he was recovering from an operation for ulcerated stomach. The wound from the operation had about healed. He claims being struck by the pole caused him to be confined to his bed, his stomach to swell, and rendered him unable to retain anything in his stomach, "not even a drink of water," for three weeks. However, after he claims he was hit, he walked to the home of Dr. Johnson, where he called by telephone the agent of the Southeastern Telephone Company and informed the company, through its agent, of his claimed injury. Dr. Johnson testified Payne came to his home and informed him he desired to call the telephone company and impart to it the information, "he was hit by a spike pole sticking over the side of a truck that passed him at the Stacey farm." Dr. Johnson looked at his arm and discovered "nothing particular, at all." Payne, at the time, was claiming it was hurting, but made no statement about his back or side. Later, or in three or four days, Dr. Johnson was called to see Payne, and found him having trouble with his stomach, claiming he was sick "at his stomach." Payne's arm, at the time, was "swollen a little," but not bruised. From the history of being "sick at his stomach," Dr. Johnson diagnosed his trouble "ulcerated stomach." On another visit of Dr. Johnson, Payne's arm "was slightly swollen around the elbow." Payne, at no time, made a statement to Dr. Johnson that his back or side had been injured by the pole. Dr. Johnson attended him on three or four different days

after the injury to his arm, but Payne never claimed to him he had sustained injury to his back or side. Dr. Johnson gave him no treatment for the arm, or back or side. It was his opinion from the history of the case and from his examination of Payne, the injury sustained by Payne by being struck by the spike pole had nothing to do with the condition of his stomach, for which he treated him. Relatives of Payne corroborate his testimony, detailing the result of the injury to his arm, back, and side. At the time Payne claims he was struck by the pole, Russell Walker, Oscar Bruner, and I. B. Eakins were in the truck which was carrying the spike pole; two of them occupied the front seat, and Eakins was on the running board on the side from which Payne claims the pole was extending that struck him. While they were setting or resetting a pole, near the edge of the highway, Payne and his wife, on foot, passed them. After completing the work of setting the pole, they placed their tools in the truck. They had with them and in use on this occasion only one spike pole, about 12 feet in length. It was placed by them, as they claim, in the truck, extending back over the rear of the truck, and not over the side as claimed by Payne. If Payne was struck by any object while the truck was passing him and his wife, they had no information or knowledge of it. Eakins, who was riding on the running board of the truck, on the side on which Payne and his wife were traveling, not only testified the pole did not extend over that side, but that Payne was not struck by it.

Our resume of the evidence discloses it was conflicting and not only sufficient to authorize a submission of the case to the jury, but to support a verdict for either party. In the circumstances, the court properly declined to direct a verdict for the defendant.

The court gave to the jury three instructions to which the Southeastern Telephone Company objected, and is here insisting neither of them properly presents the issues covered by them. Its criticism is buttressed on a sound premise.

Instruction No. 1 directed a verdict for the plaintiff if he was walking on the right-hand side of the pike exercising ordinary care for his own safety and was struck on his left arm, or side, or back, by a spike pole projecting from the truck of the defendant and was

thereby negligently and carelessly bruised, and, unless it so believed, it should find for the defendant. This instruction authorized a verdict for the plaintiff whether the truck was being operated on the highway with ordinary care, or operated at a point it had the right to be, or was being operated in an ordinarily prudent manner. In other words, if the plaintiff was struck by the spike pole, as described in the instruction, the jury was directed to return a verdict for him if he was "thereby negligently and carelessly bruised on the back, side or arm." The truck of the telephone company, not only had the right to use the highway, but had the predominating right of way; Payne had the same right to use the highway, but his right was not exclusive. It was, however, the duty of the person operating the truck to run it at a reasonable rate of speed; keep a lookout for persons on the highway, or so near in front of it as to be in danger of being struck by the truck or pole; and, if the circumstances warranted it, to give timely warning of its approach, by sounding a horn or other device; to keep the truck under reasonable control and exercise ordinary care to operate it so as to avoid coming into a collision, or causing the spike pole on the truck to come in collision, with Payne on the highway, or near its edge, and if it failed to perform such duties or any of them, and thereby caused the spike pole to strike Payne, the Southeastern Telephone Company was liable to him for the injury. It was also the duty of Payne to exercise ordinary care for his own safety and to learn of the approach of the truck and keep out of its way, and if he failed to exercise such care, and his failure, if any, so contributed to cause the spike pole to strike and injure him, but for such failure, if any, on his part, he would not have been struck by it in this event, the telephone company was not liable to him; although the jury might believe from the evidence the operator of the truck failed in one or more of his duties, as we have indicated. If Payne, while in a position of safety, saw, or otherwise knew, the truck was approaching him in the rear, and the operator of the truck knew Payne was present, or in a position to be seen by him, the duty did not rest upon the operator of the truck to sound a warning thereafter. Instructions along this line—one defining ordinary care and negligence, one the measure of damages, and another stating the number of jurors required to agree on a verdict—will be given on another trial, if one is had. Pierce v. Hosman, 201 Ky. 278, 256 S. W.

397; Jackson's Adm'r v. Rose, 239 Ky. 754, 40 S. W. (2d) 343; Lieberman v. McLaughlin, 233 Ky. 763, 26 S. W. (2d) 753; Page's Adm'r v. Scott, 245 Ky. 648, 54 S. W. (2d) 23; Fork Ridge Bus Line v. Matthews, 248 Ky. 419, 58 S. W. (2d) 615.

Instruction No. 2 permitted the jury to return a verdict for Payne's reasonable medical bill. He was not entitled to this instruction, for Dr. Johnson distinctly stated he did not treat Payne for the injury received by the spike pole, and the condition of his stomach, in which the doctor found it, was not attributable to any injury sustained by him, if he was struck by the spike pole. Payne, himself, does not claim he had paid or contracted to pay the doctor for treating him because of the injury. It also authorized the jury to return a verdict compensating him for "the permanent impairment of his power to earn money." There was no evidence authorizing this instruction. The only injury sustained by Payne that had any connection with the spike pole was a swollen arm, for which the doctor neither administered, nor charged for, treatment; nor does Dr. Johnson indicate his injury by the spike pole was permanent. It is true Payne and some of his relatives endeavored by their testimony to connect the ulcerated stomach, from which he was suffering and for which the doctor treated him, arose out of, or was connected with, his injury from being struck by the spike pole; but not being physicians, they were not competent to give an opinion that the injury by the spike pole aggravated or contributed to or in any way affected or influenced the condition of his stomach. Their testimony relative thereto was not sufficient, nor competent, to authorize the giving an instruction on the topic of "permanent impairment of his power to earn money." Instruction No. 3 directed the jury to award damage for mental and physical pain and suffering which he had endured, and which it was reasonably certain from the evidence he would yet endure as the direct and proximate result of the injury.

Considering Dr. Johnson as the only witness qualified to express an opinion as to the nature and extent of the injury resulting from being struck by the spike pole, it is very clear instruction No. 3 should not have been given.

The Southeastern Telephone Company, even if

Payne was struck by the spike pole and sustained injury to his arm, back, and side, the same being wholly disconnected with the condition of his stomach, the jury should be instructed that the telephone company is not liable therefor, or for any mental pain and suffering which Payne has or may endure on account of the condition of his stomach, and that, not only the evidence appertaining thereto should not be considered by the jury, but no award should be made by it to Payne on account thereof. As to whether the damage awarded is excessive, we express no opinion.

For the errors pointed out, the judgment is reversed for proceedings consistent herewith.