## Kelly v. Marcum.

(Decided March 15, 1938.)

610

TYE, SILER, GILLIS & SILER for appellant.
R. C. BROWNING, J. C. BIRD and R. L. POPE for appellee.

OPINION OF THE COURT BY JUDGE BAIRD—Reversing.

George Marcum obtained a verdict and judgment in the Whitley circuit court on October 1, 1936, against C. M. Kelly, for $4,000 in damages as the result of being struck by an automobile alleged to have been negligently operated by Kelly, a taxicab operator, his agents, servants, or employees. Kelly appeals. His grounds for reversal are: (1) That the verdict of $4,000 was excessive; (2) that over his objection the court permitted certain incompetent testimony to be considered by the

jury in favor of appellee; (3) that he was entitled to a peremptory instruction directing the jury to find for him at the conclusion of the testimony of appellee; and (4) erroneous instructions were given by the trial court.

We are of the opinion that instruction No. 3 given by the court over the objection of appellant was error, and, therefore, prejudicial to the substantial rights of appellant. We would accomplish nothing to incumber our opinion by a discussion of either of the alleged errors stated in grounds 1 or 2, for, if errors, they may not occur again on another trial. We will confine our discussion to the alleged errors 3 and 4. It is insisted that the petition of appellee failed to state a cause of action, because there is no allegation that Kelly owned the automobile or that his servant was operating same under his direction. We see no merit in that contention. It was not essential that the automobile that caused the injury to appellee be owned by Kelly at all. The petition did allege that the injury received by Marcum was caused by an automobile negligently operated by Kelly, a taxi cab operator, his agents, servants, or employees. Taking that allegation as true, which must be done on demurrer, it is to the effect that the automobile at the time of the injury was operated by Kelly, his agents, servants, or employees. The allegations of the petition are sufficient.

It is insisted that the appellant's motion for a directed verdict at the conclusion of appellee's testimony should have been granted by the trial court. As we have repeatedly and consistently held, if there is the slightest probative evidence to establish the issue joined, such an instruction should be refused. We are cognizant that there must be some evidence showing that the automobile that struck and injured Marcum was either the automobile of Kelly, or was being operated for him in the pursuance of, and in line of, his business. Also, that the operator, at the time, was his agent, servant, or employee. If there is any evidence to that effect, however slight, or any circumstances or reasonable inferences to be adduced from the facts testified to by the witnesses, tending to establish same, or from which the jury might reasonably arrive at the conclusion that the automobile that injured Marcum was being operated at the time in the line of business that Kelly was engaged in, and for his use and benefit, and at the time the party

so operating the taxi was the agent, servant, or employee of Kelly, then the task of deciding that question is the exclusive prerogative of the jury.

A brief resumption of the facts and the inferences reasonably and logically drawn therefrom, may be thus stated: The injury to Marcum occurred between 7 and 8 o'clock, as he walked along on a pathway used by pedestrians on the right-hand side of U. S. Highway No. 25, going south, in or near the city of Corbin, Whitley county, Ky., on the evening of the 10th day of May, 1935. On that day, and prior thereto and immediately thereafter, Kelly was engaged in operating, or having it done, taxicabs, daily and nightly, for the use of the traveling public in conveying passengers to any point they might wish to go; that he had employed chauffeurs for that purpose. Among the number he had in his employment was Dewey Davis, who was familiarly called "Red" Davis. On the date and time above stated, Orean Barton, who went by the name of "Banty" Barton, employed "Red" Davis, who was driving a taxi for appellant Kelly, to convey him from Kelly's place over to North Corbin. Albert Harris also accompanied him in the taxi. He paid "Red" Davis 25 cents for the service, which was the customary charge to passengers in going from the taxi office of Kelly to North Corbin; that the taxi driven by Davis, in conveying him and Harris, was one of the taxis that was being operated by Kelly; that he and Davis alighted from the taxi in North Corbin at a place called the "White Brick"; that "Red" Davis then immediately turned his car around and went on back the way he came, which was on U. S. Highway No. 25; that in a short time, within 15 or 20 minutes, or perhaps longer, after Davis left them, he learned that "Uncle" George Marcum was struck by some one on the highway and injured; that he walked back, but Harris did not go; that he came back on Depot street; that the next morning he saw the taxi in which he was conveyed to North Corbin setting in front of Kelly's restaurant, the same taxi that he rode over to North Corbin, that was operated by Davis; that he saw that night, after he returned to the place where Marcum was said to have been injured, a car, and it had the windshield broken, "also cracked up"; but he could not state when the broken windshield was made, but did state that it was the same car.

The proof is to the further effect that appellee, Marcum, was a deputy sheriff of Whitley county at the time of the injury, and was making a search for some alleged violators of the law. He was about 65 years of age; on that evening, somewhere between 7 and 8 o'clock, he was walking along upon a "slack" or slate path, which was about 30 inches wide and extended along the metal part of U. S. Highway No. 25; that Bill Queen and Byrd Barton were with him. They were walking single file; Bill Queen in front, Barton next, and Marcum just behind Barton. They were walking on the right-hand side of the highway, going toward Corbin, and about 300 or 350 yards from a bridge across a small creek, near the boundary between Whitley and Laurel counties. When Marcum was struck and injured, the automobile that struck him was running at a rapid rate of speed in the same direction that the three men were going, on U. S. Highway No. 25; that by the impact of the automobile, the body of Marcum was seen moving through the air, on the right-hand side of the road, "as you go toward North Corbin," in the same direction as the moving automobile, and "looked like a grass sack or something of that kind."

Appellee, Marcum, stated, in substance, that a short time before he was injured a taxicab operated by "Red" Davis passed, going toward North Corbin, in which there were two men; that, as it passed, "Red" Davis spoke to him, and said: "Hello, 'Uncle' George." He was further asked and answered as follows:

"Q. What kind of car was that met you there? A. Met Kelly's taxi.

"Q. Did you recognize it as being one of his taxis? A. I did, certainly.

"Q. Then? A. Yes sir.

"Q. Do you know who was driving it? A. I did—'Red' Davis.

"Q. How long was that in your judgment, before you was hit? A. Of course, I didn't keep close tab. At the longest—I wasn't expecting nothing to happen. I think, at the longest, couldn't have been over 10 or 15 minutes. It couldn't possibly been over 10 or 15 minutes. Just no longer than that.

"Q. Tell the jury which direction this cab was going—whether north or south. A. Going south.

"Q. Was there anybody with him? A. There was some three or four. I didn't pay—."

The same testimony, was practically given by Bill Queen, who was walking along with him, except Queen further stated that the car that struck Marcum was the only one that passed while they were walking single file along the side path, along the highway, going south. They saw the body after it had been struck by the automobile. On examination it was found to be that of Marcum. He at the time was unconscious and badly injured. Queen further stated that the car that struck Marcum did not sound a horn or give any notice of its coming; that it was running about 50 or 60 miles an hour; that immediately after the vehicle which struck Marcum passed, after it had gone a short distance down the road in the direction of the bridge over the creek, which was about 300 yards from the point where the body was injured, the party operating the automobile turned and came back in the automobile to the place near where the injury occurred and made inquiry as to who was hurt. Then Queen asked the man who he was. His answer was: "Davis." That he had seen him since that time down at the court in London; that, in his judgment, he was the same man; and that he had seen him at Corbin since, and that his name was "Red" Davis. Davis then took Queen and Barton, who were with him, to the hospital, to get someone at the hospital to take care of Marcum. The hospital was situated at a place called "Sutherland," and was run by the Kincaids. Davis then directed Barton to go into the hospital and get some one to go and get Marcum, and then told Queen, as they crossed the railroad, to remain a minute where he was, and that he would return soon; that he waited an hour and Davis never came back.

Chester Moore, another witness for appellee, stated that, on the evening that Marcum was injured, "Red" Davis came to his restaurant near the place where the injury occurred; that at the time he was operating a taxi in which Bantie Barton and a boy by the name of Harris were riding; that he stopped and bought some Coca-Cola from him and then left his place with these men, and in a few minutes, not more than 20 minutes, he learned that Marcum had been run against and injured by an automobile. He further stated that he knew Davis well and that he was then employed and had been

for some time as a taxi driver for appellant, Kelly. There was other evidence introduced by appellee tending to establish that "Red" Davis was operating the taxicab for appellant, Kelly, on that night and prior thereto, and that on the 11th or 12th day of May, a day or two after the accident, Davis continued to operate taxis for him.

From the aforesaid evidence it would have been improper for the court to have given a peremptory instruction at the conclusion of appellee's testimony. Appellant, after his testimony was heard by the jury, insisted still on his motion for a peremptory instruction. We are unable to see any necessity to repeat the evidence of the witnesses introduced by appellant, at least seriatim. The testimony of his witnesses tended to establish the fact that the automobile that struck Marcum was not the property of, or being operated for, Kelly by Davis. The testimony is to the effect that Davis was not employed by Kelly on that night. Davis denied operating the taxi that conveyed Barton and Harris from Kelly's place of business to Corbin; denied being at that place upon that night. The testimony of Kelly and his witnesses tended to corroborate him. However, most of his witnesses were members of his family. It is admitted, however, by Davis, and also by Kelly, that Davis operated his taxis until the evening of November 9th; that again on November 11th or 12th, he still operated Kelly's taxis. It is a little unreasonable, and possibly unbelievable, that Davis would have operated Kelly's taxis until the evening of the 9th and then be dismissed, especially on the evening immediately before Marcum was injured, and again be re-employed the next day or the day thereafter in the same work. Such a transaction is very significant. This testimony is in direct conflict with that of appellee, and for that reason a peremptory instruction should have been overruled. It is the province of the jury, under proper instructions, to pass upon the conflicting testimony, and not the court.

In Louisville & Nashville Railroad Co. v. Conn., 179 Ky. 478, 200 S. W. 952, 954, we said:

"It is only where there is no conflict in the testimony and there can be no room for dispute between reasonable and fair men as to the truth of the matter that the court should take the decision of the

issue away from the jury by directing a particular verdict at its hands. Kentucky Traction & Terminal Co. v. Wilson, 165 Ky. 123, 176 S. W. 991; Nelson v. Black Diamond Mining Co., 167 Ky. 676, 181 S. W. 341.''

Up to this point, we see no prejudicial error. Appellant complains particularly to certain parts of instruction No. 3, which reads as follows:

"It was likewise the duty of George Marcum in the use of said highway to travel on the right hand side thereof in the direction which he was traveling where practical and to use ordinary care for his own safety while using said highway as a pedestrian, and if you shall believe from the evidence he failed or neglected to use such care on said occasion and that as a direct and proximate result of such failure, if any, on his part, he was hit, struck and injured by said automobile or taxi and but for which negligence on his part, if any, he would not have been hit, struck or injured, then in that event you will find for the defendant.''

Appellant, in addition to a denial of the allegations of the petition, affirmatively pleaded that the contributory negligence of Marcum was the proximate cause of his injury. The error complained of particularly in that instruction is where it states that ''it was the duty of George Marcum in the use of said highway to travel on the right hand side thereof in the direction which he was traveling, etc.'' That was error.

Our attention is called to no statute requiring a pedestrian to travel upon the right-hand side of the highway, nor to any statute defining the duties of a pedestrian when walking upon the highway. The traveling of a pedestrian upon a highway is governed by the common law. It was, therefore, the duty of Marcum to exercise ordinary care for his own safety. He is not, by statute, excused from performing his common-law duty, merely because when struck he was walking on the right-hand side of the highway.

The error in instruction No. 3 was that the court in effect said to the jury that as a matter of law Marcum at the time he was struck, having been walking on the right-hand side of the highway, that he then fulfilled his duty and complied fully with the law, and, therefore,

was not guilty of contributory negligence on that account. That was error. It was the duty of Marcum when walking along on the edge of the highway, as is shown by the proof in the instant case, to exercise ordinary care for his own safety. That was a question for the jury, whether such care was exercised under the facts and circumstances of the instant case. That much of instruction No. 3 was error, and should be left out on another trial of the case.

For a clear and full discussion of the duties and rights of a pedestrian, or even a rider on horseback upon a public highway, under similar facts and circumstances as in the present case, the cases of Fullenwider et al. v. Brawner, 224 Ky. 274, 6 S. W. (2d) 264, and Southeastern Telephone Company v. Payne, 253 Ky. 245, 69 S. W. (2d) 358, and cases cited in each of those cases, are herein cited and referred to.

Complaint is further made that it was error in instruction No. 2 for the court to say that it was the duty of the person operating an automobile upon the highway to keep a constant lookout ahead for pedestrians, etc. The use of the word "constant" is not objectionable, for the reason that the operator of an automobile should at all times be alert and watchful for danger ahead, both to protect himself and the occupants of the car, if any, he is operating, as well as to avoid danger or injury to travelers upon the highway, or about to enter upon the highway. The word "constant" means that the operator should use every moment in keeping a lookout. Such an act upon his part is a duty that he cannot neglect in operating a motor vehicle.

On the whole case, we see no prejudicial error, except as pointed out in instruction No. 3. On account of that error alone, the judgment should be set aside and appellant granted a new trial.

Wherefore, the judgment is reversed, with further proceedings consistent herewith.