## Louisville & Nashville Railroad Co. v. Goodwin.

(Decided December 11, 1912.)

### Appeal from Jefferson Circuit Court
### (Common Pleas Branch, Third Division).

1.   Railroads—Opinion on Former Appeal—Submission to Jury—Instructions.—The opinion on the first appeal directed that if on another trial there should be evidence conducing to prove appellee would not have been injured, if the valve chains by which he operated a hoisting machine had been properly adjusted, the case should be submitted to the jury under the instructions given on the first trial. As there was on the last trial evidence which con-

duced to prove that appellee was injured by the improper adjustment of the valve chains, it was not error to submit the case to the jury.

2. Railroads—Submission to Jury—Contributory Negligence.—Although appellee, notwithstanding his complaint to appellant's foreman of the improper location of the valve chains and the latter's failure to properly locate them, continued to work at the hoisting machine until injured, in view of the fact that the evidence, as to whether the danger of his continuing at his post was so obvious that he must have been aware of it, was so conflicting, the trial court, under an instruction correctly presenting the issue, properly left it to the jury to determine whether his injuries were caused by his contributory negligence.

3. Railroads—Damages—Amount Awarded Not Excessive.—The amount of damages awarded, while liberal, is not so excessive as to indicate that the verdict was the result of passion or prejudice on the part of the jury.

A. T. BURGEVIN for appellee.

HELM & HELM, BENJAMIN D. WARFIELD and CHAS. H. MOORMAN for appellant.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This is the second appeal of this case. The opinion on the first appeal appears in 140 Ky., 837, and, as it contains an elaborate statement of the facts with respect to the manner in which appellee received the injuries for which he recovered damages in the court below, only a partial review of them will now be necessary.

It appears that appellee was operating an air hoist in appellant's machine shop and while so engaged an iron chain, connecting the end of a piston rod with an axle and two car wheels, broke, striking him in the face and head, thereby producing the injuries complained of.

The movements of the piston rod were controlled by the valve of an air cylinder, operated by a cross piece six inches in length, to each end of which a short chain was attached. By pulling one of these short chains the valve on the air pipe would open and the air pressure enter into the cylinder, raising the piston rod. By pulling the other short chain the air pressure escaped from the cylinder, thereby lowering the piston rod. When the piston rod was thus lowered the chain which was attached to the piston rod, and by the breaking of which appellee was injured, was connected with the car axle and wheels which were to be moved. By the application of the air

pressure to the cylinder in the manner above described, the piston rod was being raised and with it the axle and wheels, when the chain broke and struck appellee.

It is appellee's contention that his injuries were caused by the improper location of the cap of the cylinder and cross beam to which the short chains for raising and lowering the piston rod were attached. That is, that they were placed on the opposite side of the cylinder from where he had to stand in controlling the hoisting machine, which compelled him to reach around the cylinder to manipulate the valve chains and thereby place his body so close to the chain which attached the piston rod to the axle and car wheels, that the breaking of the chain necessarily injured him; whereas the proper place for the cylinder cap and valve chains was on the side of the cylinder where he had to stand in operating the hoisting machine and, if it had been so properly placed he, in manipulating the valve chains, could have stood farther off and at such a safe distance from the chain which attached the piston rod to the axle and car wheels, that the breaking of the chain would not have injured him. In considering this contention we, in the former opinion, said:

"The trial court submitted the case to the jury upon the single question of the defect in the position of the lower cap of the cylinder which placed the cross beam further away from the operator than it should be. The promise to repair, and the failure to do so, although made a ground of negligence, was ignored in the instructions, and we think properly so, as the evidence did not sufficiently show that any promise to repair was made or that appellee in continuing to work relied on any promise to repair. (American Tobacco Co. v. Adams, 137 Ky., 414.) But the case must be reversed because it does not appear from the evidence that the location of the valve chains on the cylinder cap was the proximate cause of the injury to appellee. * * * In other words there should have been some evidence conducing to show that the position appellee was compelled to occupy in operating the machine on account of the location of the valve chains placed him in such a position that the chain, if it broke, would strike him. * * * On another trial, if the evidence on this point is the same as on the last trial, the court should direct a verdict for the defendant; but if there is evidence conducing to show that appellee would not have been struck by the chain if the valve chains had

been properly adjusted, then the court should let the case go to the jury under the instructions given on the last trial.''

It will be observed that the opinion narrowed the case to the single issue stated, distinctly approved the instructions given on the first trial, and directed that the case be again submitted to the jury·under the same instructions, if the evidence on the second trial should conduce to prove that appellee would not have been struck by the chain, if the valve chains had been properly adjusted. Properly accepting the former opinion as the law of the case, the circuit court on the last trial submitted it to the jury under the instructions given on the first trial. A verdict was returned in favor of appellee for $5,000.00 damages, and the present appeal is prosecuted from the judgment entered upon that verdict. We are now called upon to determine whether there was evidence to support it. It is insisted for appellant that the evidence on the last trial did not substantially differ from that introduced in appellee's behalf on the first trial, and that a peremptory instruction directing a verdict for it should, therefore, have been given.

Our reading of the record has not enabled us to reach this conclusion. On the contrary the additional evidence required to authorize the submission of the case to the jury was supplied by the testimony of appellee and his two expert witnesses, Cook and Fletcher.

That of appellee, with great elaborateness of detail, explained his duties as operator of the hoisting machine, the safe and customary manner of operating same, and the manner of receiving his injuries; furthermore, that the placing of the cap of the cylinder, cross beam and short chains for raising and lowering the piston rod, on the opposite side of the cylinder from where he had to stand in performing his duties, rendered same unsafe for use and dangerous to him, as he was thereby compelled to manipulate the valve chains in raising and lowering the piston rod, by extending his arms and hands around the cylinder for the purpose of reaching them, which forced his body so dangerously close to the piston rod and chain attaching it to the axle and car wheels, that there was no way for him to escape injury from the breaking of the chain; that if the cap of the cylinder and valve chains had been placed on the side of the cylinder where appellee, in the performance of his duties, was compelled to stand, he could have manipulated the valve

chains without reaching around the cylinder and by standing at such a distance from the piston rod and its chain, as that no injury would have resulted to him by the breaking of the chain.

It appears from the appellee's testimony that he complained to appellant's foreman of the improper location of the cylinder cap and valve chains, and requested that they be changed to the side of the cylinder next to which he was required to stand in performing his duties, but that the requested change was not made. It does not appear that any material part of the testimony with respect to the improper location of the valve chains and the danger and injury resulting to appellant therefrom, was given by appellee on the first trial of the case or that any questions were asked him calculated to elicit it. The experts, Cook and Fletcher, were not introduced as witnesses on the first trial and their testimony appears to fully corroborate that or appellee. It may, therefore, well be said that the testimony of the three furnished the additional evidence, which the opinion on the first appeal, said would be necessary to authorize a submission of the case to the jury.

It is true the evidence furnished by the several witnesses introduced for the appellant strongly contradicted that of appellee and his two witnesses referred to, but this did not authorize a peremptory instruction as asked by the appellant. The evidence being conflicting it was the province of the jury to weigh and pass upon it all; and, as their verdict indicates, they gave greater credence to the evidence furnished by the appellee and his two witnesses than to that furnished by the appellant's witnesses. This they had the right to do, and, as in our opinion, the case is not one in which we would be justified in holding that the verdict is flagrantly against the evidence we are without authority to disturb it.

If, as argued by counsel for appellant, there was evidence conducing to show contributory negligence on the part of appellee, we can only say that that question was fairly submitted to the jury by the instruction as to contributory negligence; and, although there was evidence conducing to prove that appellee, notwithstanding his complaint to appellant's foreman of the improper location of the cylinder cap and valve chains, continued to work at the hoisting machine, in our opinion it failed to show that the danger of his continuing the performance of his duties thereat was so obvious and imminent as

that he must or ought to have known it. It cannot, therefore, be said that contributory negligence was conclusively established. It is contended by appellant's counsel that the testimony of both Cook and Fletcher was incompetent and should have been excluded from consideration at the hands of the jury. We assume from the briefs that this contention rests upon the theory that the testimony of these witnesses did not show them to be experts; but we do not find in the bill of evidence that the introduction of the witnesses was objected to on this ground. There were objections to one or two hypothetical questions asked each of them, which were, in our opinion, properly ruled on but none to such as were asked them respecting their skill and experience as machinists. It was shown that Cook is foreman of the Atlas Machine Company and that his knowledge and skill as a machinist was derived from an experience of thirty or forty years of work in that line. It was also shown that Fletcher is himself the proprietor of a machine shop and that his work and experience in handling and operating such machinery, covered a period of more than fifty years. So it is fairly apparent from the evidence that both Cook and Fletcher were familiar with such hoisting machines as the one by which appellee was injured; and, though they had never seen that particular machine, that they understood its various parts, how it should be operated, and illustrated their knowledge thereof by reference to a model of the machine which was used on the trial. In view of these facts we think each of them possessed the qualifications of an expert, for which reason their testimony was properly allowed to go to the jury.

It is also insisted for appellant that the verdict is excessive. In view of the character of appellee's injuries we cannot sustain this contention. He was first attended after they were received by appellant's surgeon, Dr. Griffith, who did not testify as a witness, because he died before the first trial. It appears, however, that Dr. J. W. Galvin, appellee's regular physician began to attend him the week following the infliction of his injuries and continued such attendance until he was able to leave his bed and home.

Upon being called as a witness and asked as to appellee's injuries Dr. Galvin said:

"His face, upper jaw, was mashed in and lip split. * * * He was laid up and a part of the time out of his

head; six, eight or ten teeth,  a number  of teeth were missing from one side, and  the upper   jaw bone  was broken in there.  He had an injury  to his breast,  his sternum, breast bone, and, I believe, an injury to his head.  I don't recall about that, it has been two or three years ago.  I treated him from January, about the 24th up until probably the middle of May.  He was laid up, confined to the house at the time.  Afterwards, I treated him occasionally for about eight months or a year. * * * I operated upon his face afterwards, on his upper lip. It was all adhering, stuck to the bone, stuck to the process bone and tissues.  He could not use his  mouth so he could not take any fluid or food. I freed it all up so he could, so he could hold material in his mouth.''

In reply to the question as to when he had last seen and examined appellee the witness replied:

''This week.''

Upon being further asked whether appellee's injuries were or not of a permanent character  the witness answered:

''Yes he is disabled, to a great extent for life.  I don't see how he can ever recover; get better now.''

Dr. D. S. Reynolds testified that he had examined appellee more than once, since his injuries were received; the last time in April, 1909.  In reply to the question:

''What did you find to be his condition at that time?''

Dr. Reynolds said:

''He has a depressed fracture of the skull at the back of his head.  He has a cut over the left  nostril there, over the left, carrying away a portion of the jaw bone containing seven  of  the teeth on  the upper side; cut through lower lip; he has profound nervous shock.''

In reply to an inquiry as to the extent, if any, of appellee's disability as to the performance of manual labor, the witness said:

''It would be difficult for me to say.  I should say a man however whose breathing is so rapid as his, with elevated temperature, feeble, irregular pulse, would not be able to do much manual labor.''

Other witnesses, relatives and neighbors of appellee, also testified as to the character of his  injuries, the length of time he was confined to his bed and home, and the extent to which his injuries impaired his ability to earn money.

It appears from the evidence that appellee, after many months of complete disability, sufficiently im-

proved in health to be able to do some light work, such as setting type; and that he is now at times engaged at that work in the Courier Journal office; but it is further apparent from the evidence that he will not again be able to perform such manual labor as he was accustomed to perform before he was injured, or to earn the same wages he then received.

It is evident that the physical and mental suffering resulting to appellee from his injuries must have been very great; and when to such suffering is added the value of the time lost by him, the expense incurred in endeavoring to effect a cure and the loss sustained in the permanent impairment of his power to earn money, caused by the injuries, the damages awarded, though liberal in amount, cannot fairly be pronounced excessive. At any rate we are unwilling to say that the verdict bears any of the ear marks of passion or prejudice on the part of the jury.

Other objections, beside those we have mentioned, are made by appellant to the judgment appealed from, but as they were determined on the first appeal and disposed of by the opinion then rendered, it will not be proper to consider them again.

Judgment affirmed, whole court sitting.