## Southern Railway Company in Kentucky v. Thacker's Administratrix.

(Decided December 16, 1913).

### Appeal from Anderson Circuit Court.

1. Railroads—Signals—Instructions.—Upon the question whether the statutory signals were sounded, the court very properly did not confine the jury to a consideration of whether or not the statutory signals were given, but allowed them also to determine whether or not in view of the character of this crossing statutory signals were sufficient.

2. Railroads—Crossings—Care Required—Question for Jury.—Such care and precautions for the safety of travelers must be exercised as the character of the crossing makes necessary, and what this degree of care is must depend upon the facts of each case and is a question for the jury.

3. Argument of Counsel—Bill of Exceptions.—The fact that appellee's counsel used the language complained of should be authenticated in the bill of exceptions before it can be considered on appeal.

WILLIS, TODD & BOND, ALEX P. HUMPHREY and EDWARD P. HUMPHREY for appellant.

EDWARDS, OGDEN & PEAK, J. W. GAINES, W. H. MORGAN and L. W. McKEE for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

Appellee's intestate while driving a heavily loaded wagon across the railroad at what is known as Duncan's

Crossing was killed by one of appellant's fast passenger trains. His wagon was demolished and one of his horses killed. The administratrix recovered $5,000 in damages. The train was running 45 or 50 miles per hour. The engineer was keeping a lookout, and when the engine was 264 feet from the crossing, he discovered Thacker, and his horses were just coming upon the track. Thacker seemed to be jerking and whipping his team at the time. He immediately gave the alarm whistle, threw on the emergency brakes, and it is clear that he did all he could after Thacker's peril was discovered to stop the train, and when he did stop it, the engine was about 1,200 feet on the other side of the road crossing. These facts are not controverted.

The proof also shows that the public road was not frequently traveled, and appellant claims that there was not any evidence that it was a dangerous crossing. If appellant merely means by this that it was in a good state of repair, the conclusion is correct. There is, however, abundant proof that at this point the view was so obstructed that travelers on the public road could not see approaching trains, and those operating the engine could not see those on the highway in time to avert accident by the usual precautions. The public road came to the railroad up a rather steep hill, and on account of the conformation of the country, the curve in the railroad track, and the brush and vines along the public road, and the cattle guard adjacent thereto, the jury had a right to believe that the railroad company owed more to travelers over this crossing than the sounding of the statutory signals. There is scarcely any conflict in the proof as to these physical facts, and the testimony of appellant's engineer, Muir, illustrates the dangerous character of the crossing. He was the engineer on the train that killed Thacker, and before the trial went to the spot with another train of similar character for the purpose of testing out and demonstrating disputed points in the case. He said the first view of the crossing was given the engineer when his engine came to a point 264 feet from it, and at no point further than that could any one be seen on the public road until they got within 48 feet of the railroad track on the road.

As to whether the statutory signals were sounded quite a lot of testimony was heard, and the evidence preponderates in showing that they were sounded.

Appellant's witnesses showing this fact were more numerous and their opportunities for observation were better than the witnesses offered by appellee to the contrary. But there was enough evidence on the question to justify the lower court in submitting the case to the jury. Appellant especially objects to instruction number two, which is as follows:

"It was the duty of defendant's agents in charge of its engine at the time and place referred to in the evidence to give reasonable and timely notice and warning of the approach of said engine to the public highway crossing known as Duncan Crossing, and to exercise such care to avoid injuring decedent, R. E. Thacker, while using said crossing as ordinarily prudent persons in the operation of an engine would exercise under circumstances similar to those proven in this case, and if the jury believe from the evidence that defendant's agents in charge of said engine negligently failed to observe any of the duties incumbent on them as herein set out by reason of which said Thacker was struck and killed, his wagon destroyed and one of his horses killed, the law is for the plaintiff, and the jury should so find."

Appellant, however, is in no position to criticise the court for giving this instruction, for it asked the court to give, and the court did give, an instruction which was the converse exactly òf instruction number two, and is as follows:

"Unless the jury believe from the evidence that those in charge of defendant's engine at the time and place referred to in the evidence, negligently failed to give reasonable and timely notice or warning of the approach of the engine to the public highway crossing known as Duncan's Crossing, and to exercise such care to avoid injurying decedent, R. E. Thacker, while using said crossing as ordinarily prudent persons in the operation of an engine would exercise under circumstances similar to those proven in this case and by reason of such negligence said Thacker was struck and killed, his wagon destroyed and one of his horses killed, the law is for the defendant, and the jury should so find."

The court just as properly gave the jury instruction number two as the one offered by appellant, and the questions submitted in both instructions were triable ones, for issues were joined on all these propositions.

The court very properly did not confine the jury to a consideration of whether or not the statutory signals were given, but allowed them also to determine whether in view of the character of this crossing statutory signals were sufficient. The case of C. & O. v. Gunter, 108 Ky., 362, was very similar to this, and the lower court there instructed the jury, that if they believed from the evidence the crossing was an unusually dangerous one, it was the duty of the defendant to use some *effective* means other than statutory signals to warn travelers of the approach of trains, and its failure to do so was negligence. This court was of the opinion that while the law did not require the railroad company to use *absolutely effective* means for this purpose, still it was held that it was a question for the jury to decide, under proper instructions, whether the means employed were reasonably sufficient, under the circumstances of the case, and considering the nature of the crossing, and the physical conformation of the country surrounding it.

To the same effect is the ruling of the court in the case of C. N. O. & T. P. Ry. Co. v. Champ, 31 K. L. R., 1057, where we held:

"In the numerous cases involving crossing accidents that have come before this court, the central idea in all of them is that the company must use such care and precautions for the safety of travelers as the character of the crossing makes reasonably necessary for their safety and protection. What this degree of care is, must depend upon the facts of each case, and is a question for the jury. At one crossing ringing the bell and sounding the whistle might be amply sufficient; at another, it would be wholly inadequate, and a flagman or other safety device be necessary."

Appellant further insists that counsel for appellee in his closing argument was guilty of misconduct grossly prejudicial to the railroad company. This misconduct is referred to in the motion for a new trial, and the objectionable language set forth by affidavit of appellant's counsel. The bill of exceptions shows that this affidavit was filed, so we have before us the affidavit of appellant's counsel that counsel for appellee did use certain objectionable language. Under the rule of Warren v. Nash, 24 Ky.L. R.,479, such a presentation perhaps would have been sufficient to bring the objectionable matter to us for consideration, but the Warren v. Nash case has been

overruled on this point by the more recent case of Bannon v. Louisville Trust Co., Admr., 150 Ky., 405. It is not sufficient that appellant's counsel make affidavit as to the language used, or that the court certify that appellant's counsel did make such an affidavit. The fact that appellee's counsel used the language complained of should be authenticated to us in the bill of exceptions by the lower court before we can consider whether or not it was prejudicial.

The judgment of the lower court is therefore affirmed.