## Farmers Bank of West Louisville v. Birk, et al.

(Decided March 12, 1918.

### Appeal from Daviess Circuit Court.

1. Evidence—Competency—Impeachment of Writing.—It is competent to impeach the consideration of a writing by parol proof, but in order for the evidence to be sufficient for that purpose it should be clear and convincing.

2. Evidence—Impeachment of Writing.—A writing presented for the first time upon the trial and introduced as evidence without having been relied upon in the pleading may be impeached by the one against whom it is introduced for fraud or other invalidating facts without a pleading to that effect.

3. Trial—Instructions—Defining Words.—Under the facts of this record it was not error for the court to decline to define the word "consideration."

4. Trial—Evidence—Scintilla Rule.—If the evidence upon an issue in contest is sufficient to raise a scintilla of proof, the court should not take the case from the jury by a directed verdict, although if one should be returned in favor of the litigant having only such scintilla it might be so flagrantly against the evidence as to authorize the court to set it aside upon that ground.

5. Appeal and Error—Insufficiency of Evidence.—Evidence examined in this case and found to be insufficient to sustain a verdict for defendants in a suit upon a note where the defense was no consideration and that it was executed solely for the accommodation of the plaintiff.

E. B. ANDERSON and W. FOSTER HAYES for appellant.

BIRKHEAD & WILSON and CLEMENTS & CLEMENTS for appellees.

Opinion of the Court by Judge Thomas—Reversing.

On October 21, 1914, appellees and defendants below, L. Newman Birk and his mother, Mary E. Birk, executed their joint note to the appellant and plaintiff below by which they agreed to pay plaintiff ninety days thereafter the sum of $1,800.00, and to secure the note they pledged to the plaintiff as collateral two bonds of $1,000.00 each which had been executed by the Fern Hill Coal Company on April 1, 1909, and were each due on April 1, 1915. These bonds, with attached coupons for the payment of interest thereon semi-annually at the rate of six per centum, were a part of a series of such bonds amounting in the aggregate to the sum of $60,000.00. There was a provision at the date of their issue that the Fern Hill Coal Company would lay aside a certain amount each year to create a sinking fund with which to pay the bonds, and it was further stipulated that if the coal company should violate that provision, or should fail and refuse to pay any bond or installment of interest, the entire series of bonds might be treated as due by any holder thereof, who might proceed to collect them.

The note sued on is a remote renewal of another one executed by the same parties to the plaintiff for the sum of $2,000.00 on June 15, 1911, which was renewed by defendants and the interest paid on October 7, 1911, January 10, 1912, and May 2, 1912. On September 3, 1912, defendants paid $200.00, and on that day a note was executed by them to plaintiff for the balance of $1,800.00, which was renewed on December 3, 1912, April 5, 1913, August 2, 1913, December 20, 1913, April 1, 1914, and August 21, 1914. On October 21, 1914, it was again renewed, and upon that renewal this suit is based. The interest was paid on all renewals up to the last one. For some time after the execution of the first note for $2,000.00 the interest was paid on the collateral bonds, but this was accounted for by the bank to the defendants. At the date of the execution of the first note for $2,000.00, plaintiff was the owner of three of the bonds of the coal company, each being for the sum of $1,000.00, and it was for the purchase price of two of those bonds that the note was executed.

The defense is that the defendants never purchased the two bonds in question; that there was no consideration for the first note executed, nor for any of the re-

newals, since, as it is claimed, the original transaction was purely for the accommodation of plaintiff, and from which defendants reaped no benefit, nor did they acquire any property thereby. No one testified for the defendants except the defendant, L. Newman Birk, and he says that he was largely interested in the coal company and had practically all of his property bound up in it; that it had failed to comply with the stipulations and conditions hereinbefore mentioned, and the plaintiff as owner of three of the bonds was threatening to file suit to collect all of them and to throw the coal company into the hands of a receiver; that the bank examiner had objected to the plaintiff continuing to hold the bonds as an asset, and that under these conditions, to accommodate the bank he, with his mother, executed the first note in consideration of the pretended purchase of two of the bonds and attached them as collateral thereto with the understanding at the time that neither he nor his mother would ever be called upon to pay the note, or any part thereof. This testimony is flatly contradicted by the president of the bank, with whom the original transaction was had. That transaction occurred on April 20, 1911, on which day defendants executed the following writing, denominated ''Memorandum of Agreement:''

''For and in consideration of the sum of $1.00 and other valuable consideration, we, the undersigned, L. Newman Birk and M. E. Birk, hereby agree to purchase from the Farmers Bank of West Louisville, Kentucky, $2,000.00 of the bonds of the Fern Hill Coal Company at par and interest on or before 1st day of June; 1911; and to pay for same in cash or by joint note, secured by said bonds; due on or before the 1st of November, 1911, with interest at six per cent. from date. Witness our hands this 20th day of April, 1911. L. Newman Birk, M. E. Birk.''

Defendant, L. Newman Birk, enclosed that agreement to the bank in a letter in which, among other things, he said:

''I also send you memorandum of agreement which Mr. Riney will understand, and if you will send me note for the amount of the bond on June 1st, payable on or before November 1st, I will have same signed and returned to you. It being understood as per my agreement with Riney and Mr. Larkins that I could renew same provided it was not convenient for me to take up same on or before November 1st.''

It is admitted that the statement taken from the letter referred to the purchase of the two bonds for which the first note was executed and it is further admitted that defendants got the benefit of the interest on the bonds after the execution of the first note. The trial resulted in a verdict for the defendants, and complaining of numerous errors plaintiff prosecutes this appeal.

It is first insisted that inasmuch as the paper styled "Memorandum of Agreement" is not assailed in any of the pleadings, it will be conclusively presumed that it was executed upon a sufficient consideration, and therefore free from the vice which it is claimed affects the note. This perhaps would be true if plaintiff had relied upon that writing in its pleading, but we find that that agreement found its way into the record for the first time as evidence introduced upon the trial. Under the rule laid down in the case of Whitesides v. Murphy, 174 Ky. 583, and authorities therein referred to, it was competent for the defendant to assail the validity of that writing coming as it did for the first time as evidence without a pleading to that effect, and we do not think that this point raised by the plaintiff is well taken.

It is also complained that the court erred in the instructions which it gave to the jury, but we are unable, with the assistance of counsel, to find any error in this regard. In substance the instructions told the jury that they would find for the plaintiff the amount of the note sued upon and interest, unless they believed that the original note was executed without consideration, or solely for the accommodation of plaintiff, and with the agreement that defendants would not be called upon to pay it. One instruction offered by plaintiff, and which was refused, directed the jury to find for plaintiff if they believed the original note was executed for the purchase price of the two bonds of the Fern Hill Coal Company, and another one attempted to define what constituted a consideration. Since the purchase of the bonds would constitute a consideration, and whether or not that was done was the very question being litigated, we think the instruction given by the court fully covers that phase of the case, and there was no error committed in refusing that instruction offered by plaintiff. Nor do we think that the term "consideration," under the facts of this case, was of such technical significance as to require a definition at the hands of the court. We therefore con-

clude that there was no error committed to the prejudice of plaintiff in the giving or refusing instructions.

Complaint is also made that the court overruled plaintiff's motion for a directed verdict in its favor made at the close of defendants' testimony and renewed at the close of all the testimony, but in view of the scintilla rule prevailing in this jurisdiction we are convinced that the testimony of the defendant, L. Newman Birk, as to the nature of the transaction was sufficient to authorize the submission of the case to the jury, and that the court did not err in overruling the motion contended for.

However, we are firmly of the opinion that the verdict of the jury is flagrantly against the evidence. The explanations made by the defendant, L. Newman Birk, as to why he received the interest on the bonds after he and his mother executed the original note is exceedingly hazy and entirely unsatisfactory. In fact his explanation is practically a statement that he does not know why he received that interest. He attempts to explain the payment of $200.00 upon the original indebtedness after renewing it twice by saying that plaintiff was threatening to sue on the bonds, and that to save the property which he had invested in the coal company he made the payment. This explanation is weakened when it is remembered that if such suit had been brought the same defense could have been made to it as is now being made to the note in contest. Similar explanations are made as a reason why the note was continued to be renewed thereafter, and interest paid. The coal company during these renewals, or about the time of the last one, failed, and there was realized from the bonds held by plaintiff as collateral the sum of $410.25, with which the note sued on is credited. Throughout the entire time, and up to and including the filing of this suit, no such contention as is now being made by the defendants, so far as this record discloses, was ever mentioned.

We are fully aware that the consideration of a writing may be impeached when sought to be enforced. This rule of practice has not only been many times recognized by this court, but it has a statutory existence, as will be seen from section 472 of the Kentucky Statutes. But the evidence offered to impeach the consideration of a writing should be clear and convincing. The writing itself imports a consideration, and when parties have adopted the precaution of making a written memorial of their

agreement presumably for the purpose of protecting their rights against forgetfulness and a fading memory, such precautionary acts should not lightly be set aside. This view of the question was dealt with by this court in the case of Combs v. Combs, 130 Ky. 827, and in announcing the rule just stated, as well as the reasons underlying it, the court in its opinion said:

"The actual consideration of a written obligation may be shown, though it contradict the writing. Section 472 Ky. Stats. 1903. But this does not mean that the writing is to be ignored upon that point, and the matter tried out alone by the parol testimony of the witnesses. On the contrary, the rule is that the writing is *prima facie* correct, in stating the consideration, and the burden of showing that it is not, is upon him who seeks to impeach it. It is regarded with favor just like other documentary evidence, and, to overcome it by parol evidence, the proof should be clear and convincing. If it were otherwise, then no advantage would accrue to one who had taken the care and deliberation to engross the real transaction in a written memorial for the very purpose of relieving against misrecollection, or intended misstatement in the future. A writing would afford no protection, and would decline to the same value as a parol agreement, if that were not so. The law favors the diligent. It also favors writings as evidence in preference to parol testimony. It is recognized that what the parties set their hands to deliberately contemporaneously with the principal transaction was, because it was then fresh, more probably free from doubt, and, not having in view a litigation, would express the truth, and, if it had not, the parties would have then changed it to conform to the truth. After a great while men forget, and sometimes altered circumstances affect their views, and in consequence their testimony, while bias colors their statements. There is every consideration for favoring the written evidence made at the time in preference to the parol testimony of witnesses afterward given."

Looking at the testimony in this case in the light of that rule, we find only one witness testifying for the defendants contradicting the note. He is opposed by the witnesses who testify for plaintiff, and by the note, the memorandum agreement, and his letter. Also by the circumstance of continuous renewals of the note, the payment of interest thereon, the payment of $200.00 on the

principal, and the collection of interest on the bonds. An additional circumstance not altogether consistent with the position taken by the defendants' witness is that plaintiff did not relieve the cause of the bank examiner's criticism by the sham transaction it had with the defendants, if their theory be correct, since the device resorted to still left it the owner of another $1,000.00 objectionable bond of the coal company. If its purpose was to deceive the examiner, why, might it not be inquired, did it not procure defendants to execute their note for $3,000.00 in a pretended purchase of all three of the bonds? This fact would also tend to disprove the statement that the $200.00 payment was made to prevent plaintiff from suing on the collateral bonds, for it could do that at any time on the one it continued to openly hold.

Under the scintilla rule prevailing in this state it is the duty of the court to refuse a peremptory instruction and to submit the issues to the jury, although a verdict for one side might be flagrantly against the evidence so as to justify the court in setting it aside for that reason. This queer result as a rule of practice grows out of and proceeds from the recognition and application of the scintilla doctrine, since the quantum of evidence necessary to create a scintilla may be insufficient to save a verdict from being flagrantly against the evidence.

Having arrived at the conclusion that although a peremptory instruction should not have been given, the verdict, the effect of which is to impeach the note sued on, is flagrantly against the evidence, it results that the judgment rendered upon the verdict should be and it is hereby reversed, with directions to set it aside and grant the plaintiff a new trial, and for proceedings consistent with this opinion.