## Burdon v. Burdon's Administratrix, et al.

(Decided June 12, 1928.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, First Division).

1. Wills.—In proceedings contesting probate of will leaving property to wife as induced by undue influence, evidence of relationship and business arrangements between testator and mother and brothers and sisters, showing merely that there was some moral obligation resting on testator, which should have induced him to make will different from that which he did make, held not to establish undue influence, courts not having power to compel execution of wills and distribution of property as it ought to be done.

2. Wills.—In proceeding by mother of testator contesting probate of will leaving property to wife, evidence by mother that testator told her he was going to leave enough property to support her during life, and evidence of other witnesses that testator stated he would leave property to wife for life, did not support contention that will was executed by undue influence.

3. Wills.—Evidence merely establishing opportunity to exercise undue influence inducing execution of will is not sufficient to authorize trial court to submit question of undue influence to jury.

4. Wills.—To authorize submission to jury of question of undue influence inducing execution of will, facts and circumstances must

exist from which jury would be authorized to infer that undue influence was in truth exercised.

5.  Wills.—In proceeding by mother of testator contesting probate of will devising property to testator's wife, refusal to submit to jury question of undue influence inducing execution of will was proper, where there was no evidence in any way tending to show that wife directly or indirectly attempted in any way to exercise any influence over testator concerning execution of will.

6.  Trial.—Trial court should not take from jury any question in issue, where evidence to any extent conduces to establish cause of action, but, if there is evidence of probative value, question must be determined by jury.

7.  Trial.—Suspicion or conjecture is never sufficient to constitute evidence sufficient to warrant submission of case to jury.

8.  Wills.—Rule that will contest should be submitted to jury, if there is scintilla of evidence supporting contention of contestant, held not applicable to supply or furnish proof when there is none, or to elevate mere probability to degree of proof.

9.  Trial.—If evidence is sufficient to raise a scintilla of proof, issue should not be taken from jury by directed verdict, though evidence might not be sufficient to sustain verdict in favor of one having established the scintilla.

10. Wills.—In proceedings contesting probate of will on ground that testator was not mentally capable of executing will, refusal to submit issue of mental incapacity to jury was proper, where statements of witnesses concerning testator's mental capacity relied on to raise scintilla of proof were vague and uncertain, and not impressed with quality of proof having fitness to induce conviction.

11. Wills.—In will contest, question whether paper offered as will was wholly in testator's handwriting and signed by him was for jury, whose determination adversely to contestant cannot be disturbed.

12. Wills.—Will by testator having no children leaving bulk of property to wife held not to show lack of love or respect for mother, sisters, and brothers, and not to show will was unusual or unreasonable, where income from property was not more than sufficient to support wife comfortably, and mother was fairly well provided for.

13. Appeal and Error.—Errors in selection of jury cannot be shown on appeal by affidavits.

14. Appeal and Error.—If bill of exceptions fails to show error in selecting jury, Court of Appeals must assume that ruling of trial court was correct.

15. Appeal and Error.—In will contest involving question whether will was in handwriting of testator, statement by juror that he had changed his method of making "a" within last three or four years, made in questioning witness comparing writing and will which were three years apart, held not sufficient to justify holding that statement was prejudicial error, in view of extended testimony.

16. Appeal and Error.—In will contest involving question whether will was in handwriting of testator, error in permitting statement by juror that he had changed his method of making "a" within last three or four years, made in questioning witness comparing writing and will, which were three years apart, not excepted to, need not be sustained on appeal.

17. Appeal and Error.—Where closing argument of attorney for contestant in will contest objected to was not shown in bill of exceptions, and did not appear in bill of evidence, but merely appeared in affidavits submitted in support of motion to discharge jury, objection to argument was not properly before Court of Appeals for review.

18. Trial.—Ordinarily, when court sustains an exception to argument of counsel, it is usually sufficient to remove possibility of error.

19. Trial.—Where court sustained objection to argument of counsel, and statement complained of was withdrawn from consideration of jury, and court further admonished jury as to only question before it, overruling of motion to discharge jury because of objectionable argument was proper

20. Trial.—Great latitude should be given counsel in making his arguments so long as he remains within facts presented by evidence, and details only reasonable deductions that may be drawn therefrom, but counsel may not create impression on minds of jury not justified by evidence or reasonable deductions therefrom.

21. Wills.—In proceedings contesting will for undue influence inducing execution of will, mental incapacity of testator and that will was not wholly in testator's handwriting, evidence shedding no light on question whether paper offered was written by testator, or tending to show that will was executed as result of undue influence, or that testator was lacking in mental capacity at time of its execution, should not have been admitted.

MORTON K. YONTS for appellant.

JAMES GARNETT and B. F. GARDNER for appellees.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

This was an appeal from an order of the Jefferson county court entered September 8, 1926, admitting to probate the will of E. O. Burdon. The appeal was from the order of probate by Mary Burdon, mother of E. O. Burdon. This appeal was heard in the circuit court, and a jury returned a verdict sustaining the will. The correctness of the rulings of the trial court is called in question. The will bears date May 6, 1925. It is in language as follows:

"Fisherville, Ky., May 6, 1925.

"The last will and testament of E. O. Burdon. "I bequeath to my mother, Mrs. Mary Burdon

5.00. My brother C. A. Burdon 5.00. My brother Pres Burdon 5.00. My sister Minnie Bryant 5.00. After all my debts are paid I bequeath all the resedue of my estate to my wife Ida Burdon.

E. O. Burdon

"Last will and testament
"May 6, 1925."

It is the contention of appellees that the will is wholly in the handwriting of E. O. Burdon. He died September 1, 1926. The validity of the will is attacked on three grounds: (1) That E. O. Burdon was induced to execute the will by undue influence; (2) that he was not mentally capable of executing a will at the time; (3) that the will is not wholly in the handwriting of E. O. Burdon.

E. O. Burdon left no children surviving him. Ida Burdon, to whom he left his property, was his wife. Mary Burdon, who contested the will and the appellant here, is his mother. C. A. Burdon and Pres Burdon are his brothers, and Minnie Bryant is his sister. The brothers and the sister, while not joining with the mother in contesting the will, were made parties to the action. They appear to have been interested on the side of their mother.

We have searched the evidence diligently to find out if there is anything showing, or tending to show, undue influence, or whether there is any fact, or facts, in the record from which undue influence might be inferred. There is no proof that his wife, Ida Burdon, at any time or under any circumstances attempted to influence him, and there is a total lack of evidence of facts showing that any effort at any time was made to influence him in the execution of his will. There are no facts established and no circumstances shown from which undue influence might be inferred. The facts upon which appellant seems to rely as tending to establish undue influence are matters relating to the relationship and business arrangements existing between E. O. Burdon on the one side, and his mother and brothers and sister on the other side, after the death of the father of E. O. Burdon, and prior to his marriage. His father died in 1891, leaving Mary Burdon, his widow, and four sons, E. O., C. A., Clarence, and Presley Burdon. Clarence died in 1913. At the time of the death of his father, the family were left in straitened circumstances. The only property was a cheap farm covered by a mortgage for $300, and a small quantity of personal property consisting of farming utensils, live

stock, and household goods. E. O. Burdon was 18 years of age at the death of his father. Minnie (now Mrs. Bryant) was 16, C. A. 14, Clarence 12, and Presley 10. E. O. Burdon became the head of the family, and he showed good judgment and business capacity. He engaged in the huckster business, operated a butcher business, ran a dairy, and conducted the affairs of the farm generally. Such earnings as were left after supporting the family were used as a common fund, with Owen as the one controlling its disposition. An effort was made to show that he had bought some farms and paid for them out of the joint fund. We doubt whether there is any evidence which establishes this as a fact, but, if there is, it does not show, or tend to show, undue influence. He bought farms before he was married, but an examination of the deeds placed in the record shows that he paid no great sum for them, and the payments were distributed throughout several years. The value of this land was developed through the efforts and good management of E. O. Burdon. There may have been some joint earnings, but they could not have amounted to any great sum before all the children reached the age of 21 years. When Minnie married, her brother E. O. Burdon gave her $250. When his brother C. A. Burdon reached the age of 21, he made arrangements with him that he would pay him $1,000 if he remained and worked on the farm for 5 years. He paid the $1,000 to his brother, who performed the services as agreed. Probably he made a like arrangement with another brother. The farm was improved, a new house was erected, or remodeled, and a new barn built. We have briefly referred to the character of evidence introduced along this line. It may be worth something to show how E. O. Burdon ought to have made his will, but courts have not the power to compel the execution of wills and the distribution of property as it ought to be done, even if it should be conceded that E. O. Burdon was under some obligation to provide for his mother and his brothers and sister. Such evidence may have some probative value as tending to show that the provisions of a will when made are not unnatural, and for that reason such evidence might be competent, but it has little, if any, force when it serves no purpose other than to show, or tend to show, that there was some moral obligation resting upon the testator which should have induced him to make a will different from that which he did make.

Appellant testified that E. O. Burdon on one occasion told her that, when he made his will, he was going to

will her enough to support her as long as she lived, so that she would never want for anything. Another witness stated that he said he would leave his property to his wife during her life, and at her death he wanted it to go where it would do the most good; while another testified that he made substantially the same statement to her. There is nothing in this evidence tending to support the contention of appellant that the will of E. O. Burdon was executed through the undue influence of another. It has been often held by this court that it is not sufficient to authorize the trial court to submit the question of undue influence to a jury when the evidence merely establishes that there was an opportunity to exercise such influence. It must not only be established by the evidence that there was an opportunity to exercise undue influence, but, in addition thereto, there must be testimony which shows facts and circumstances from which the jury would be authorized to infer that it was in truth exercised. Brent v. Fleming, 165 Ky. 356, 176 S. W. 1134; Wiggington's Ex'r v. Wiggington, 194 Ky. 385, 239 S. W. 455, are illustrative cases. If establishment of opportunity to exercise undue influence should be held sufficient to authorize the court to submit that question to a jury, any person contesting the will of a husband who had left his property to his wife would always be assured of having his case submitted to the jury. A man's wife, if any one, should always be in a position to exercise influence over him. In this case, however, there is no evidence which in any way tends to show that the wife of E. O. Burdon, directly or indirectly, attempted in any way to exercise any influence over her husband concerning the execution of a will. The court was correct, therefore, in not submitting the question to the jury.

It is also insisted that there was evidence tending to show that E. O. Burdon was incapable of making a will at the time this one was executed. There is an apparent conflict in appellant's position on this point. It seems to be argued in the brief, and there was testimony to support the argument, that:

> "At the time of this will, May 6, 1925, E. O. Burdon was active and vigorous, in full possession of his faculties, and was going about the country making trades and bargains, and that his physical health and strength of mind were not impaired."

Counsel for appellant argues in his brief that the facts quoted were established by the testimony of appel-

lees. It is argued from these facts by counsel for appellant that the will offered in evidence was not in the handwriting of E. O. Burdon, because it showed on its face that it was not written by a strong and vigorous man. Further along in the brief it is argued that E. O. Burdon had been seriously ill for several years prior to the execution of the will. If it be true that it was established by the testimony for appellees that E. O. Burdon was sound in body and mind at the time he executed the will, we must look elsewhere for evidence tending to show that he was mentally incompetent to make the will on May 6, 1925. There is no evidence in the record showing, or tending to show, that the will was executed on any other date. There is a suggestion from time to time repeated that the will was not executed on that date, but we have searched in vain for any tangible evidence which indicates that the will does not bear a true date. The appellant, mother of E. O. Burdon, was asked the usual question calculated to elicit an answer showing whether she was of the opinion that E. O. Burdon had mind and memory to know all his property and its value as well as to recognize and appreciate the claims of all of his relatives upon him, that is, the natural objects of his bounty, and whether he had mind enough with a fixed purpose of his own to execute a will and make a disposition of his property in accordance with his desires. Her answer was:

"Well, he was very weak and very nervous. I don't know that he did. It was a sad thing."

C. A. Burdon, a brother of the testator, in answering the same character of question, said there was a part of the time that he would not consider his brother competent to make a will, but as to the rest of the time he would not like to express an opinion. He gave it as his opinion that a majority of the time E. O. Burdon was not competent to make a will. A sister of the testator, Mrs. Bryant, in answering the same question, said:

"I don't know just how he was, but in condition —he was a sick man. He was not well."

Upon being pressed further for a more definite answer she said:

"Well, I don't think so."

Another brother, Pres. Burdon, in answering the same question, gave it as his opinion that there were

times when he did not think his brother was competent to make a will. None of these witnesses were experts, and all of them were interested parties either directly or indirectly. It is true that it was established by the evidence that E. O. Burdon had been in failing health for some years, but the evidence which we have referred to is all that we can find in the record, with the possible exception of another nonexpert or two who made substantially the same statements.

It has been often held by this court that the trial court should not take from the jury any question in issue where the evidence to any extent conduces to establish the cause of action. If there is evidence of probative value, the question must be determined by a jury. Among the many cases so holding we cite L. & N. R. R. Co. v. Goodwin, 151 Ky. 151, 151 S. W. 376; L. & N. R. R. Co. v. Conn, 179 Ky. 478, 200 S. W. 592; Kentucky T. & T. Co. v. Wilson, 165 Ky. 128, 176 S. W. 991; L. & N. R. R. Co. v. Baker's Adm'r, 183 Ky. 795, 210 S. W. 674; Chicago, St. Louis & New Orleans R. R. Co. v. Armstrong's Adm'r, 168 Ky. 104, 181 S. W. 957; Nelson v. Black Diamond Mining Co., 167 Ky. 676, 181 S. W. 341.

In will contests this court has often held to the doctrine that, if there is a scintilla of evidence supporting the contention of the contestant, the question should be submitted to the jury. This court, however, in recent years has reluctantly followed the scintilla rule when a verdict supported only by a scintilla of evidence would be set aside as flagrantly against the testimony. Wood v. Corcoran, 190 Ky. 621, 228 S. W. 32. It has been held by this court that evidence so incredible as to contradict well-known laws does not furnish the scintilla of evidence which requires an issue to be submitted to the jury. Webb v. Elkhorn Mining Corporation, 198 Ky. 270, 248 S. W. 844. In the case of Wigginton Ex'r v. Wigginton, supra, it was held by this court in a most carefully considered opinion that in determining what constitutes a scintilla the quantity and character of evidence adduced must be such as to induce conviction in order to produce the necessary scintilla. It was also there held that isolated acts or circumstances not reasonably inducive of the opinion expressed are not sufficient evidence on the question of mental incapacity in will cases. In the case of Langford's Ex'r v. Miles, 189 Ky. 515, 225 S. W. 246, and in the case of Poll v. Patterson, 178 Ky. 22, 198 S. W. 567, it was held that the scintilla rule requires evidence,

and that by evidence is meant something of substance and relevant consequence, and not vague, uncertain, or irrelevant matter not carrying the quality of proof or having fitness to induce conviction. The scintilla rule does not mean that something can be made out of nothing. Suspicion or conjecture is never sufficient to constitute evidence. Gay v. Gay, 183 Ky. 238, 209 S. W. 11. The scintilla rule has never been applied in such a way as to give the effect of supplying or furnishing proof when there is none. It cannot elevate a mere probability to the degree of proof. It is to make effectual the quantum of proof necessary to create it, but it cannot supply proof when proof is wanting.

If the evidence is sufficient to raise a scintilla of proof, an issue should not be taken from the jury by a directed verdict, and this is true, although the evidence might not be sufficient to sustain a verdict in favor of the one having established the scintilla. Farmers' Bank of West Louisville v. Birk, 179 Ky. 761, 201 S. W. 315; C. & O. Ry. Co. v. Johnson, 151 Ky. 809, 152 S. W. 962; Dailey v. Lexington & Eastern R. R. Co., 180 Ky. 668, 203 S. W. 569; I. C. R. R. Co. v. Holmes, 196 Ky. 303, 244 S. W. 768; Hines v. Gaines, 192 Ky. 198, 232 S. W. 624.

The statements of witnesses relied on by appellant to raise the scintilla rule are not something of substance and relevance. It is vague and uncertain, and not impressed with the quality of proof having fitness to induce conviction. Therefore, under the authority of Wigginton, Ex'r v. Wigginton, supra; Cecil's Ex'r v. Anhier, 176 Ky. 198, 195 S. W. 837; Robinson v. Davenport Ex'r, 179 Ky. 598, 201 S. W. 28; Schrodt's Ex'r. v. Schrodt, 181 Ky. 174, 203 S. W. 1051, we are of the opinion that the trial court ruled correctly when he refused to submit the issue of mental incapacity to the jury.

The only question submitted to the jury was whether the paper offered in evidence as the last will and testament of E. O. Burdon was wholly in his handwriting and signed by him. No useful purpose would be served in attempting to state or analyze the proof on this point. We have considered it in detail, and we have examined the photographic copies of the will as well as the other matter admittedly written by E. O. Burdon. The question was for the jury, and it was submitted under an instruction free from valid criticism. The jury having determined the question adversely to the appellant, we cannot disturb the verdict on that ground.

Neither can we agree with the contention of appellant that E. O. Burdon showed a lack of love and respect for his mother and his sister and brothers when he left his property to his wife instead of dividing it or leaving it to them. It ought not to be said that it is unfair and unjust for a man to make provisions for the care and comfort of his wife above all others when he realizes that he is about to take his departure, and will no longer be able to give her the shelter and protection which he promised her at the altar. The property which E. O. Burdon left to his wife was his. The income therefrom will not be more than sufficient to support his widow comfortably. His mother was old, and, while not abundantly provided with the things necessary for her comfort and convenience, she was probably as well or better provided for at the time of his death than she had been at any time during her previous life. She had a home consisting of a small farm, and she also had her dower in the farm left by her husband. In addition, she had some other property. Added to this, she had two stalwart sons, and no doubt E. O. Burdon felt secure in the belief that they, with the assistance of their sister, would look after the comfort of their old mother. This record affords no reason to believe that his confidence in that respect was unjustified. If he had left his property undisposed of, or had left it to his mother, it is self-evident that the greater portion of it would have eventually gone to his brothers and his sister. The will was not unusual or unreasonable in its terms.

It is urged that there was error in the selection of the jury, in that one of the jurors who stated that he was not a housekeeper was accepted as a qualified juror over the objection of appellant. We do not know whether such occurred. There is nothing in the bill of exceptions or elsewhere about it that we can find. The name of the juror is given in affidavits, and an examination of the list of jurors who served discloses that the name of the juror mentioned in the affidavits is not in the list. The errors in the selection of a jury cannot be shown by affidavits. We look to the bill of exceptions for errors of that kind, and, finding nothing in the bill of exceptions, we must assume that the ruling of the trial court was correct.

While contestant was putting on her proof, she offered an expert who was testifying that the will offered in evidence was not in the handwriting of E. O. Burdon. One of the jurors asked the witness a few questions. The first related as to the difference in point of time in the

writing of the paper with which the will was being at the time compared and the will. The witness answered that the difference in time was 3 years. The juror then asked the witness if he did not know that men changed the way of making their letters in that time. The witness admitted that was true, but said the changes were not so pronounced. The juror then said:

"I have changed my signature in the last two or three years, or in the last 3 or 4 years—the way I sign a check, or make a check out, I don't make the 'a' the same."

The witness started to reply to that statement when the court interposed, saying:

"Well, what the witness is here for is to give his opinion, and you gentlemen can discuss it among yourselves in the jury room when the case it submitted."

Counsel for appellant then interposed an objection. There is no objection to the question asked by the juror or to his statement. There is an attempt to show by affidavits that the juror by his facial expression and his language showed that he disagreed with the statements made by the witness, but it is not in the bill of exceptions. There was no objection to the questions of the juror, and, if we treat the bill of evidence as a part of the bill of exceptions, we get from it only what is indicated above.

Assuming, however, that proper exceptions had been taken, we are of the opinion that the court would not be justified in holding that the statements of the juror were prejudicial error. The facts in the case were fully developed. There are four large volumes of evidence, and it would be unreasonable to believe that the mere statement of a juror during the progress of a trial that he had changed his signature or his method of making an "a" within the last 3 or 4 years would lead the jury astray in the consideration of the evidence. But we are on safe grounds in refusing to sustain the contention of appellant where there was no exception to the statements of the juror.

Complaint is made about the closing argument of the attorney representing the appellee Mrs. Ida Burdon. The statements made by the attorney, as alleged, are not shown in the bill of exceptions, and we do not find them even in the bill of evidence. They do appear in affidavits.

submitted in support of a motion to discharge the jury, which motion counsel for appellant claims was made. The argument complained about in one particular may have been improper, but the court sustained the objection to it, and, if there had been proper exceptions to the argument, we do not believe that it would be proper for us to hold that it was prejudicial error. Ordinarily, when the court sustains an exception to the argument of counsel, it is usually sufficient to remove possibility of error. Objection was made, to the argument most seriously complained about, and the court sustained the objection. Counsel for appellant moved the court to tell the jury that the statement was improper. In response to that the court said:

"I won't say that: I will withdraw that from the jury's consideration. The question we have here is whether or not Mr. Burdon wrote this paper that purports to be his will."

The statement complained about was withdrawn from the consideration of the jury, and the court properly took occasion to go further and admonish the jury that no question was before it for consideration other than whether E. O. Burdon wrote the paper purporting to be his will. This was all that was required, and there was no error in overruling the motion to discharge the jury. But, as we have said, the matter is not properly before us. Southern Railway Co. v. Thacker's Adm'x, 156 Ky. 486, 161 S. W. 236.

Great latitude should be given counsel in making his arguments as long as he remains within the facts presented by the evidence, and details only the reasonable deductions that may be drawn therefrom. Pullman Co. v. Pulliam, 187 Ky. 220, 218 S. W. 1005. This trial was long drawn out, and the attorneys were deeply interested in behalf of their respective clients. Attorneys should always be careful in their statements before the jury that they may not be such as to create an impression on the minds of the jury not justified by the evidence or the reasonable deductions therefrom. But the rule must not be made too strict. The trial court, and in this instance he was a judge of long experience and outstanding ability, must be largely depended on to take care of such matters and see that the attorneys in their ardor do not exceed due bounds.

There is some complaint about evidence admitted and rejected, but an examination of the evidence which counsel for appellant insists should have been admitted in behalf of his client shows that it was either incompetent or irrelevant and immaterial. The one issue in the case was whether the paper offered in evidence as the will of E. O. Burdon was wholly written and signed by him. Evidence which sheds no light on this point should not have been admitted, except to the extent that it showed, or tended to show, that the will was executed as the result of undue influence, or that testator was lacking in mental capacity at the time of its execution. Perceiving no prejudicial error in the record, the judgment of the lower court should be affirmed.

Judgment affirmed.