## Meriweather's Adm'x v. Pickering.

(Decided April 29, 1938.)

FREDERICK OLSZWESKI for appellant.

S. D. HODGE for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

This appeal questions the propriety of the trial court's ruling and judgment, in sustaining the motion of defendant (here appellee) for a peremptory instruction, and thereupon dismissing petition of plaintiff (here appellant) with costs.

A statement of the facts of the case, so far as pertinent to the determination of the question here presented, is that Tom Meriweather, an old colored man, living at Dawson Springs, Ky., and whose occupation was that of collecting and selling rags and old iron, had contracted with the appellee, William G. Pickering, who operated a trucking business out of Princeton under the name of Merchants Service Line, to transport for him a consignment of rags and old iron from Dawson Springs to Hopkinsville for its sale there; that, pursuant to such arrangement, the appellee, Pickering, sent

his truck (a one and one-half ton Chevrolet) in charge of his employee and truckman, Virgil Francis, to pick up Meriweather's rags and iron for delivery to Hopkinsville; that, when doing this, Francis invited Meriweather to get into the cab of the truck with him and his wife, who was then with him, and accompany them, while carrying Meriweather's consignment of freight to Hopkinsville.

The evidence is that upon thus leaving Dawson Springs over United States highway 62 (extending north-eastwardly towards Earlington) they had reached a point thereon some 3 miles from Dawson Springs, where the road very sharply curved, when Francis suddenly saw, some 50 feet ahead of him, a fast approaching truck, which he judged (but was not positive) was being driven on his (Francis') side of the road, when, in order to avoid a head-on collision with it, he believes, but cannot say "it was done so quick," that he cut over to his left. Francis states that, when he suddenly pulled his truck to the left, the driver of the other truck at the same time also swerved his truck to his right, thereby causing a collision between them on Francis' left side of the road, when the right front fender of Francis' truck hit the left front fender of the approaching truck, causing them to both swerve and nose into the bank at the left of the road, each truck standing parallel with the other, with their rear ends extending back over the middle of the road. Francis also testified that as he rounded this sharp curve he was driving his truck at the rate of 35 miles an hour and that it was a rainy, dark day.

The impact of this collision between the trucks resulted in throwing Meriweather, who was sitting on the right side of the cab, practically from it, badly injuring him.

Francis, the appellee's truckman, when testifying upon the trial of this case for the plaintiff, the administratrix of Meriweather, whose death shortly followed his injuries sustained in the collision, stated that Mr. Pickering, his employer, had, when instructing him to go by Meriweather's and pick up his rags and iron for shipment to Hopkinsville, also instructed him to take Tom Meriweather along, as Tom was to see after selling them there, when he (the driver of the truck) was to collect from Tom 20 cents a hundred for the rags and 10 cents a hundred for the iron.

However, his employer, Mr. Pickering, when testifying, very stoutly denied that he gave Francis any such instructions, but, on the other hand, had instructed him, as he had every driver, that he was to carry no passengers and do no drinking on the job; that he had never instructed Francis to transport any passengers and knew nothing of Tom Meriweather's having ridden in his truck upon this occasion until he was called by the owner of the other truck, Mr. Simpkins, of Madisonville, and notified of the collision.

It further appears that the driver of the appellee's truck, Francis, after testifying as above set out for the plaintiff administratrix, was upon his cross-examination handed a written statement given by him, purporting to detail the facts and circumstances of this collision when testifying in a suit growing out of it between his employer, Pickering, and the owner of the other truck involved in it, wherein he stated that the collision was due to the fault of the driver of the other or Simpkins' truck; that it had not rained that morning after they left Dawson Springs; that as he had started over the hill he had let his foot off the gas, as he usuallly did when going around a curve; that as he started around it he saw the other truck coming but that it was so close he didn't have time to stop; that it was on his (Francis') right side of the road (the other driver's left); that the other driver made no attempt to pull over, so he cut short and tried to miss him and would have hit him center if he hadn't; that he (the other driver) "hit kinder on the right side of my truck's right headlight; * * * after they hit, they came together and went across the road into the ditch. * * * The colored man was hanging out of the cab by his feet. I judge I was going between twenty-five to thirty-five miles an hour when I went into the curve. * * * I consider it was the other truck driver's fault."

The introduction of this statement was objected to, but the objection was overruled, with the admonition given the jury that it was only allowed to be put in evidence for the purpose of contradicting the witness, if it did, and for no other purpose.

This suit was brought by the appellant, Mary Meriweather, as administratrix, etc., of Tom Meriweather, after her due appointment and qualification as such following her husband's death, as due to the inju-

ries sustained in this accident, against the owners of the trucks, Pickering and Simpkins, and also the drivers of the two trucks involved in the collision.

However, all the defendants have passed out of the case, so far as this appeal is concerned except the appellee, Pickering, against whom alone the appellant is prosecuting this appeal upon the grounds that the court erred in sustaining appellee's motion for a directed verdict and in dismissing her petition.

Therefore, our inquiry here involves but the one question of whether or not there was any evidence introduced by plaintiff in support of her claim against the appellee for damages for the death of her husband growing out of the collision of his truck with another, alleged to have been caused by his driver's negligent operation of it, since, if there were, the motion made by the appellee for a directed verdict was improperly sustained by the court.

Such is the general rule in this state, that where there is any evidence to sustain an issue, the question becomes one for the jury to decide, not the court. From this it follows that, if there were here any evidence sustaining the appellant upon the question of whether or not the appellee was guilty of any negligence, having a causal connection with the collision, such question being one of fact, its determination rested, as does the decision of every issue of fact, exclusively with the jury.

> "It is the province of the jury to weigh the evidence, including inferences from all proven circumstances. Even a scintilla of evidence warrants the submission of the case to the jury, though the weight of the evidence is in defendant's favor." Hobson's Instructions to Juries, sec. 54, p. 31. See, also, Champion Ice, etc., Co. v. Delsignore & Bro., 105 S. W. 1181, 32 Ky. Law Rep. 427; Louisville & Nashville Railroad Company v. Mount, 125 Ky. 593, 101 S. W. 1182, 31 Ky. Law Rep. 210; Louisville & Nashville Railroad Company v. Goodwin, 151 Ky. 149, 151 S. W. 376; Perry County v. Eversole, 98 S. W. 1019, 30 Ky. Law Rep. 453.

And again is the rule therein cited, that "the weight to be given to the testimony of witnesses, as well as their credibility, are questions which should be submitted to the jury." Cincinnati, N. O. & T. P. Railway Company v. Evans' Adm'r, 129 Ky. 152, 110 S. W. 844,

33 Ky. Law Rep. 596; Bruton's Adm'r v. Eddington-Griffiths Company, Ky., 118 S. W. 1001; City of Louisville v. Tompkins, Ky., 122 S. W. 174.

On the other hand, it is stated in section 55 of the same authority that ''where evidence is not sufficient to support the averments of the petition it is proper for the court to give the jury a peremptory instruction to find for defendant''; and further that ''where only one legitimate inference can be drawn from facts which are not disputed the court and not the jury should determine their effect.''

Considering now the evidence given upon this trial, which the lower court has found constitutes no evidence supporting the averments of the petition, and on such ground dismissed same, it is to be noted that the evidence is in dispute on the point of whether or not the deceased, Tom Meriweather, was, when riding in appellee's truck at the time it collided with the other truck, an invitee or a mere trespasser being given a ride to Hopkinsville in appellee's truck without his consent.

The appellee states that the latter was the case, while the truck driver is equally positive, and so testifies, that the appellee, when telling him to go by and get this shipment of freight at Meriweather's house, also then told him to take Meriweather along with him to Hopkinsville, in order that he might there sell his rags and iron and from the sale proceeds pay him the amount of the freight bill owing him for their transportation.

As the question of appellee's liability to the appellant for the injury sustained by Meriweather in the collision, if it was caused by the negligence of Francis, his truck driver, turns on whether or not Meriweather was a trespasser or an invitee in the truck at the time of its collision with Simpkins' truck, it is our conclusion, based upon the evidence given wholly by the driver Francis as to the cause and circumstances of its occurrence, even though it appears that different and contradictory versions of it were given by him as to where the blame therefor rested, that his testimony does yet constitute some substantial evidence of his negligent operation of appellee's truck, tending to cause the collision, which made this issue, upon the question of his negligence, one calling for its determination by the jury.

Upon this point, it is to be noted that the truck driver testifies, and his statement is undenied, that as he drove the truck around the hill, on this sharply curving road, it was at the time raining and it was difficult for him to see clearly ahead, and that he couldn't say whether the truck, which he suddenly there saw approaching him, was on its right or left side of the road, nor could he say just what was his own position, but that it was about the center or on the right of the road, when he cut his car over to the left.

Unless the approaching truck was being driven at that time on Francis' side of the road and a sudden emergency thus created by another, it must follow that under such circumstances Francis was himself negligent in then turning over to the left side of the road, where it is undisputed the collision between the trucks occurred.

Also, it may be noted that Francis, the appellee's truck driver, testifies that, when going around this curve in the road, despite the bad view ahead, due both to its raining and the sharp curve in the road, he was going at a speed of about 35 miles an hour.

The law is that one operating a motor vehicle upon a highway must, in doing so, exercise a reasonable and ordinary care, having due regard to the traffic and other conditions under which he is traveling.

As tending to show the failure on the part of the drivers of motor vehicles generally to exercise ordinary care in their way and manner of driving them, it is provided by section 2739g-51, subsection 2, Kentucky Statutes, that:

"Where a highway passes * * * around any sharp curve, or on a steep grade in or outside of * *. * city or town, if the rate of speed of passing automobiles exceeds thereon twenty miles an hour it shall be prima facie evidence of unreasonable and improper driving."

Whether this subsection 2 of the above section, 2739g-51, so providing, was or was not repealed by later section 2739g-86, repealing and changing the regulatory provisions of its subsection 4, section 2739g-51, with respect to improper driving of trucks upon the state's highways and declaring what rates of speed specified classes of trucks were driven should be con-

sidered excessive and, as such, constitute prima facie evidence of improper or negligent driving, it is unnecessary to here decide or consider further than to briefly quote the language of the decision made in the case of Hopper v. Barren Fork Coal Company, 263 Ky. 446, 92 S. W. (2d) 776, 781, wherein it was said:

"So much of subsection 4 of section 2739g-51 as prescribes the rate of speed for the operation of trucks was repealed by section 7 of chapter 106 Acts of the General Assembly 1932, p. 537, now section 2739g-86, Baldwin's Supp. 1933. The act of 1932 of which this section is a part especially repeals all laws and parts of laws in conflict with it. Inasmuch as section 2739g-86 expressly fixes the rate of speed for operating trucks on the highway, it necessarily conflicts with the similar provision in section 2739g-51 (Ky. St. Supp. 1933)."

It is our conclusion, as above indicated, that the testimony of Francis that he was driving at a rate of 35 miles an hour under the adverse conditions named was some evidence of negligence, for the reason that it yet remains, without attempting to define or admeasure the repealing scope and effect of the Hopper Case, as embracing subsection 2 of this section, 2739g-51, of the Statutes, nonetheless true that section 2739g-86, nor the decision above quoted, construing it as repealing subsection 4 of this section 2739g-51, of the Statutes, did not tend to change or affect the basic rule generally applying to all cases of motor vehicle driving; that each operator thereof, whatever its type or character, when driving on our highways, must exercise reasonable and ordinary care for the protection and safety, both of himself and other users of them and have due regard for the traffic conditions under which he is then driving, and that his failure to observe such duties, whether evidenced by his driving at an excessive rate of speed or on the wrong side of the road, or however done, where it evidences such failure to exercise reasonable care under the then existing circumstances and conditions, would constitute some evidence of negligence.

We are of the opinion that the evidence given by appellee's truck driver, that he was driving down a sharply curved highway at a speed of 35 miles per hour, under the aggravated conditions and circumstances of traffic surrounding the collision detailed in his testimony, constituted some evidence, showing his

failure, as was his duty, to exercise a reasonable or any care, upon the issue made of negligence and upon which plaintiff had a right to go to the jury for its decision of this question. Bell & Bell v. Rascoe, 250 Ky. 756, 63 S. W. (2d) 932.

Therefore, such being our view, that same was substantial evidence, it determines the question here submitted as to the propriety of the peremptory instruction given, when considered in the light of these clearly established rules, supra, by which we are constrained to conclude that the court erred in sustaining the appellee's motion for a directed verdict, and for such error its judgment must be and it is reversed and the cause remanded for a new trial consistent with this opinion.